Marlon GRAY, et al., Plaintiffs,

v.

NEW YORK LIFE INSURANCE COMPANY, et al., Defendants.

Civ. A. No. 94–AR–2471–S.

United States District Court, N.D. Alabama, Southern Division.

Nov. 8, 1995.

Ronald O. Gaiser, Jr., Gaiser & Associates, Birmingham, AL, Richard C. Barineau, Barineau & Barineau, Birmingham, AL, for Marlon Gray, Roderick Marshall, Kenneth Nelson, Barry Caudell, Larry R. Roudioux.

N. Lee Cooper, John N. Bolus, Sarah E. Yates, Maynard Cooper & Gale, Birmingham, AL, Loren Kieve, Debevoise & Plimpton, Washington, DC, for New York Life Insurance Company.

Cavender C. Kimble, LeeAnn M. Pounds, Balch & Bingham, Birmingham, AL, N. Lee Cooper, John N. Bolus, Sarah E. Yates, Maynard Cooper & Gale, Birmingham, AL, James B. Kierce, Jr., Stone Patton Kierce & Freeman, Bessemer, AL, for Gregory B. Trapp.

## MEMORANDUM OPINION

ACKER, District Judge.

The above-entitled case presents the question of when to award fees to attorneys who successfully resist a removal from state court. In *Gray v. New York Life Ins. Co.*, 879 F.Supp. 99 (N.D.Ala.1995), this court explained why this case was remanded to the Circuit Court of Jefferson County, Alabama, on motion of plaintiffs, Marlon Gray, et al., after having been removed to this court by defendants, New York Life Insurance Company, et al. The above-cited memorandum opinion need not here be repeated, except to note that it prominently featured *Hensley v. Philadelphia Life Ins. Co.*, 878 F.Supp. 1465 (N.D.Ala.1995), contemporaneously decided by this court. There was more than the ordinary amount of lawyer activity during the prosecution of plaintiffs' motion to remand because the court permitted discovery limited to whether a federal question existed under the concept of ERISA "super-preemption" (29 U.S.C. § 1001, *et seq.*), which had been the sole basis of the removal. The state court insurance fraud complaint made no reference to ERISA.

After this court's remand order, which expressly found that the removal had been "improvident" and that this court lacked jurisdiction, plaintiffs timely petitioned for attorney's fees and expenses pursuant to 28 U.S.C. § 1447(c). The court deferred consideration of plaintiffs' said request until defendants had completed unsuccessful attempts to obtain an appellate review of the remand order, both by petition for writ of mandamus and by direct appeal. Plaintiffs then supported their application for attorney's fees with affidavits that prove the number of lawyer-hours expended in resisting the removal and that demonstrate the hourly rates regularly charged by plaintiffs' two lawyers. The total fees and expenses claimed are $10,-

674.69. The questions now presented have been briefed and orally argued.

Defendants resist plaintiffs' claim in a desultory fashion insofar as its *amount* is concerned. However, they draw the line, amounting to a chasm between the parties, by flatly denying the viability *vel non* of plaintiffs' request under § 1447(c). Defendants argue that they removed this case in good faith, had a legitimate and rational basis for doing so, and should not be penalized by having to pay attorney's fees just because they were unsuccessful. According to this court's understanding of § 1447(c), as will hereinafter appear, plaintiffs have the better argument.

This court is entirely willing to concede that defendants were not engaged in some dark design when they undertook this removal. Nevertheless, their removal was not without substantial risk. Even if their removal can be said to have had an arguable basis in law and fact, its basis was, at best, questionable. Most insurance misrepresentation complaints in state courts, despite a series of removal failures in the Eleventh Circuit culminating in *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995), still seem to foster in the target defendants an irresistible urge to remove by the simple device of characterizing the plaintiff's claim as one "relating to" ERISA. When remanding this particular case, the court said: "The ERISA removal knees continue to jerk." *Gray*, 879 F.Supp. at 100. There is not enough room here to list the growing number of cases in which some defendant has stretched beyond all reason the concept of "super-preemption" by using his "super-imagination" to find a remote connection to ERISA. Perhaps the latest, both decided on September 20, 1995, are *Padeh v. Zagoria*, 900 F.Supp. 442 (S.D.Fla.1995), and *Cook Wholesale of Medina, Inc. v. Connecticut General Life Ins. Co.*, 898 F.Supp. 151 (W.D.N.Y.1995).

Because the Supreme Court and the Eleventh Circuit are silent on the precise subject under consideration, the court must look

elsewhere for answers. For the reasons which follow, this court finds that a proper application of § 1447(c) in this case calls for the taxation of plaintiffs' attorney's fees and expenses against these defendants, whose removal turned out not only to be erroneous but somewhat expensive.

### 28 U.S.C. § 1447(c): "Remove at Your Peril"

The Judicial Improvements and Access to Justice Act of 1988 (Pub.L. 100–702) made substantial changes in 28 U.S.C. §§ 1446 and 1447. Plainly, one of the Congressional purposes was to narrow the removal opportunity. The message was: "Remove at your peril!" This Congressional intent must be kept in mind as the 1988 changes are construed and applied to concrete situations. For instance, while doing away with the long-required removal bond, the new § 1446(a) expressly requires that the notice of removal be signed pursuant to Rule 11, F.R.Civ.P. This reference to Rule 11 is redundant because Rule 11 would apply anyway, but the reference constitutes an extra-special warning to removing defendants that they are subject to sanctions if the averments in their notice of removal are not well grounded in fact and warranted by law. The fact that §§ 1447(c) and 1446(a) were amended simultaneously so that § 1447(c) specifically allows for the awarding of attorneys fees against a defendant whose removal proves erroneous, might constitute a double redundancy if the application of § 1447(c) called for no more than a Rule 11 style analysis in deciding whether to award attorneys fees. Therefore, the amendment to § 1447(c) must have *additional* meaning. The remainder of this opinion will be this court's effort to divine that meaning.

Prior to the 1988 amendments, attorneys fees to the plaintiff were rarely awarded as part of "just costs," which prior to 1988 could be awarded pursuant to § 1447(c) only in the event the removal was deemed "improvident." An example of an unusual pre–1988 award of attorneys fees as part of "just costs" is *Elsis v. Hertz Corp.,* 581 F.Supp. 604, 608 (E.D.N.Y.1984), in which the district court held that as a proximate consequence of the case having been "removed improvidently and without jurisdiction" the plaintiff would receive his "costs and *reasonable attorney's fees incurred by bringing the motion to remand.*" (emphasis supplied). An example of the more usual pre–1988 case in which the court refused to include attorneys fees among "just costs" is *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981). There the Tenth Circuit held that it was unnecessary for the district court to find "bad faith" before awarding any "just costs," that is, even though the removal was "improvident," but the court nevertheless reversed the trial court's award of attorneys fees, saying that such an award is punitive in nature and only to be ordered if the improvident removal was occasioned by more than simple negligence and more than frivolity. In other words, before 1988 the Tenth Circuit, despite its enigmatic disclaimer, required a finding of something indistinguishable from "bad faith" before attorneys fees could be awarded.

The Sixth Circuit went even further than the Tenth, holding prior to 1988 that attorneys fees could *never* be part of "just costs." It specifically itemized the recoverable costs. Conspicuously, its list of "just costs" did not include attorneys fees. The Sixth Circuit put it this way in *Bucary v. Rothrock,* 883 F.2d 447, 450 (6th Cir.1989): "The Supreme Court has recently made it clear that, absent clear congressional intent to the contrary, federal courts are only authorized to award the specific 'costs' set out in 28 U.S.C. § 1920." The thinking represented by the *Cornwall* and *Bucary* courts undoubtedly provided the impetus for Congress to amend § 1447(c) in 1988 in order to make it clear that attorneys fees are available to a plaintiff who successfully resists a removal, even though there is no finding of "bad faith" by the removing defendant.

Beyond eliminating the "bad faith" requirement, the 1988 amendment expressly includes "attorneys fees" among the "actual expenses" that can be awarded under § 1447(c) in the event the removal proves ineffectual, even though perhaps not "improvident." The new language supplements rather than repeats the reference in

§ 1446(c) to Rule 11. The language in § 1447(c) constitutes an alternative, adequate costs threat without having to resort to Rule 11. *See* H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, *reprinted in* 1988 U.S.C.C.A.N. pp. 5982, 6032, 6033. The pertinent language of § 1447(c), as it now reads, is: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Cases from other circuits *after* the 1988 amendments make clear that the imposition of fees in the event of an erroneous removal is not automatic but a matter for the exercise of the sound discretion of the court, and that after the lower court has decided the question, its decision is reviewed under an abuse-of-discretion standard. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 325 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994); *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir.1993); *Moore v. Permanente Medical Group*, 981 F.2d 443, 447 (9th Cir. 1992); *Morgan Guaranty Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992).

A significant number of district courts have since 1988 routinely awarded attorney's fees under § 1447(c). Here are eight of them in chronological order:

(1). *Elkhart Co-op Equity Exchange v. Day*, 716 F.Supp. 1384, 1388 (D.Kan.1988):

The movants seek costs and attorney's fees pursuant to 28 U.S.C.A. § 1447(c) (West Supp.1989). As amended in November of 1988, this provision now allows the court to award, besides costs, "any actual expenses, including attorney's fees." Farmland argues the statutory change does not alter the established standard for awarding attorney's fees on remand only when the removal has been in "bad faith, vexatious, wanton, or oppressive." *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir.1981); *Armstrong v. Goldblatt Tool Co.*, 609 F.Supp. 736, 739 (D.Kan.1985). This argument entirely misapprehends the "American rule" on the award of attorney's fees. The award of attorney's fees for vexatious conduct or bad faith is but one

exception to the "American rule" and is vested in the "inherent power" of the courts. *Alyeska Pipeline Serv. v. Wilderness Soc.*, 421 U.S. 240, 258–260, 95 S.Ct. 1612, 1622–1623, 44 L.Ed.2d 141 (1975). This exception in no way impacts upon Congress' power "to pick and choose among its statutes and to allow attorneys' fees under some, but not others." *Alyeska*, 421 U.S. at 263, 95 S.Ct. at 1624. By virtue of the amendment to § 1447(c), attorney's fees are now treated in the same fashion as costs, with both matters being left to the court's discretion.

(2). *Locklear v. State Farm Mut. Auto. Ins. Co.*, 742 F.Supp. 679, 681 (S.D.Ga. 1989):

The removal statute provides that, "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (1988). An award of costs does not require a showing of bad faith, but merely a showing that the action was removed "improvidently." *Schmidt v. National Organization for Women*, 562 F.Supp. 210, 215 (N.D.Fla.1983). The Court finds that defendant's basis for removal was "sufficiently weak" to warrant an assessment of costs and attorney fees. *Bucary v. Rothrock*, 883 F.2d 447 (6th Cir.1989).

(3). *King Provision Corp. v. Burger King Corp.*, 750 F.Supp. 501, 506 (M.D.Fla. 1990):

A federal district court may order a defendant to pay attorney fees and costs incurred by a plaintiff as a result of an improper removal. 28 U.S.C. § 1447(c) (1988). Such a decision is within the sound discretion of the trial court. In the instant case, the Court finds that the law interpreting the perimeters of the artful pleading doctrine is somewhat ambiguous. Consequently, the defendant's basis for removal and opposition to the plaintiff's motion to remand was colorable, and the Court will deny the plaintiff's request for attorney fees and costs.

(4). *Moore v. Kaiser Foundation Hospitals, Inc.*, 765 F.Supp. 1464, 1465–66

(N.D.Cal.1991), *aff'd* 981 F.2d 443 (9th Cir. 1992):

The language of former § 1447(c) did *not* explicitly provide for an award of fees. Thus, unlike costs, fees could not be awarded in the absence of a showing that the removal was not fairly supportable and that the removal was in bad faith. *Schmitt v. Insurance Co. of North America,* 845 F.2d 1546, 1552 (9th Cir.1988).

The amendments to 28 U.S.C. § 1447(c) make clear that a threshold determination of bad faith is no longer necessary to award fees. Congress has authorized the award of costs *and* fees by the same language that it formerly used to authorize the award of costs alone. Congress' amendment of the statute reflects a greater willingness to permit courts to award fees upon remand. If Congress had intended to require a finding of bad faith before awarding fees, Congress could easily have so stated. At the very least, in extending the right to recover both fees and costs, it would not have used the language virtually identical to that which had been used to authorize the award of costs alone without any bad faith finding. (emphasis the court's).

(5). *S.M. v. Jones,* 794 F.Supp. 638, 639 (W.D.Tex.1992): This Court hereby finds that the plaintiffs are entitled to their reasonable attorney's fees and expenses incurred as a result of the defendants' improper removal. *See* 28 U.S.C. § 1447(c). (footnote omitted).

(6). *Liebig v. DeJoy,* 814 F.Supp. 1074, 1077 (M.D.Fla.1993):

Prior to the amendment of Sec. 1447(c) in 1988, a showing of bad faith was required before attorney's fees would be awarded under this section since attorney's fees were not expressly provided for under the statute. *Schmidt v. National Organization for Women,* 562 F.Supp. 210 (N.D.Fla.1983). In addition, the former Sec. 1447(c) required a finding that the Notice of Removal was improvidently filed before costs could be awarded. *Id.* The 1988 amendment to this statute, however, expressly provided for the award of attorney's fees and eliminated the requirement that a Notice of Removal be improvidently filed before costs could be awarded.

(7). *Mattice v. ITT Hartford Ins. Group,* 837 F.Supp. 499, 500 (N.D.N.Y. 1993):

Applying § 1447(c), courts have awarded reasonable attorney fees incurred in bringing remand motions. *See, e.g., id.; Alternative Systems, Inc. v. Connors,* Civ. No. 93–20244, 1993 WL 299223 (N.D.Cal. July 27, 1993); *Penrod Drilling Corp. v. Granite State Ins. Co.,* 764 F.Supp. 1146 (S.D.Tex.1990); *Ehrlich v. Oxford Ins. Co.,* 700 F.Supp. 495 (N.D.Cal.1988). In the present case, the court finds that Plaintiff is likewise entitled to reasonable attorney's fees incurred by the remand motion.

(8). *Husk v. E.I. DuPont De Nemours and Company,* 842 F.Supp. 895, 898–99 (S.D.W.Va.1994):

The Plaintiff also seeks attorney fees and costs involved in his motion to remand. An award of attorney fees and costs may be made pursuant to 28 U.S.C. § 1447(c). . . .

\*    \*    \*    \*    \*    \*

In this case the Defendant's removal was ill-founded. A cursory examination of the applicable law would have revealed that the federal district court does not have jurisdiction over the case because no federal question is raised by the Plaintiff's complaint. The Court finds that an award to the Plaintiff of attorney fees and costs incurred as a result of the removal is appropriate in this instance.

This court does not fully agree with the Fifth Circuit when it said in *Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1994), that there should be no "routine imposition" of attorney's fees under amended § 1447(c). With the word "may" still in the statute, this court agrees, of course, that the award of fees does not inevitably follow every remand. Because the operative word is not "shall," the question becomes one of *when* to award fees. This court believes that in exercising the discretion provided by § 1447(c), the presumption is in favor of awarding attorneys fees in the event the removal is found to have been improvident and/or the fatal defect in

the removal is not of the waivable variety. The court will do its best to state the reasoning by which it reaches this conclusion.

This court does not find it odd that since 1988 it has never before been asked to award fees under § 1447(c). There are at least two reasons for this. First, most winning movants are so glad to get back to the state court from whence they were unceremoniously plucked that they totally and happily overlook the § 1447(c) possibility for recovering their fees. Another explanation for the paucity of petitions for attorneys fees is that the fees incurred by a plaintiff in obtaining a remand are usually relatively small, so that to claim them might cost $1,000 to chase $500. The instant case justifies plaintiffs' time and effort in claiming fees, because $10,000 is worth fighting for, even in today's era of fee inflation.

Unless there are to be cases which call for the awarding of substantial fees, the 1988 amendment would never have been enacted. The Second Circuit has held that a district court's award of *$136,000* in attorney's fees after an improvident removal was "fair and equitable under all the circumstances." *Morgan Guaranty,* 971 F.2d at 924. The Sixth Circuit has adopted this Second Circuit standard. *Morris,* 985 F.2d at 240. This court does not quarrel with the Second or the Sixth Circuits when they say that to exercise the discretion granted by § 1447(c) requires that the district court consider *all of the pertinent circumstances.* The question which follows is, of course: "What circumstances are pertinent?" It is difficult, if not impossible, to imagine all of the circumstances that might legitimately influence the exercise of the discretion provided by § 1447(c). Knowing that there may be relevant circumstances it cannot anticipate, this court will discuss the few it can think of.

### Circumstance No. 1: "Good Faith" vs. "Bad Faith"

■ It goes without saying that if a removal is taken in bad faith, that fact constitutes a circumstance militating strongly in favor of an award of fees against the removing party. Conversely, it is also clear that a finding that the removing party acted in bad faith is not an absolute precondition to an award of attorneys fees under § 1447(c). *Daleske,* 17 F.3d at 324, correctly holds that the amendment to § 1447(c) "negate[s] any requirement that the removal be in bad faith before fees can be awarded." *Moore,* 981 F.2d at 446, agrees. The eight district courts quoted *supra* all agree. To the contrary, at least one nearby district court after the 1988 amendment held: "It appears that this removal petition was filed *in good faith. Thus, the plaintiffs' attorneys fees should not be taxed to defendants." Nichols v. Southeast Health Plan of Alabama, Inc.,* 859 F.Supp. 553, 559 (S.D.Ala.1993) (emphasis supplied). If the court in *Nichols* meant, as would appear from the language, to make the fact that the removing party acted in "good faith" a circumstance that always stands in the way of an award of fees, this court respectfully disagrees. "Good faith" vs. "bad faith" is a highly subjective fact question. To make this finding the controlling consideration on whether or not to assess fees would be to frustrate, if not to repudiate, the 1988 Congressional purpose.

### Circumstance No. 2: "Motivation" or "Intent"

■ Akin to, but arguably distinct from, the issue of good faith is the removing defendant's motivation in effecting the removal. This court has some difficulty in drawing a distinction between the concepts of "bad faith" and "improper motivation." Perhaps a federal court should be more tolerant of an erroneously removing defendant who has decided to run from the sure whipping he thinks he will get from a "home-cookin'" state court than of a removing defendant motivated by a desire to prolong the litigation, even if a delaying tactic does not quite add up to "bad faith." While this court has difficulty making this distinction, some courts seem to have been able to make it. The Tenth Circuit in *Daleske,* while holding that bad faith is not necessary, affirmed a refusal to award attorneys fees where the defendant had a *"legitimate basis for believing"* that he could remove. *Daleske,* 17 F.3d at 325 (emphasis supplied). This court comes closer to agreeing with the Sixth Circuit in *Morris,* where it held: "[A] finding of improper pur-

pose is not necessary to support an award under [this] section...." 985 F.2d at 240. Likewise, the Second Circuit in *Morgan Guaranty* held: "[T]he statute as amended makes no reference at all to the state of mind or intent of the party removing the action." 971 F.2d at 923.

### Circumstance No. 3, The Controlling Circumstance: "Improvidence" vs. "Objective Reasonableness"

Prior to 1988 the magic words in an order of remand were "improvidently" and "without jurisdiction." Despite the elimination of the word "improvident" in 1988, the concept hangs on and inheres in any proper exercise of court discretion under § 1447(c). The core question must be: "Was the removal 'improvident,' in contrast to being merely 'mistaken'; and if 'mistaken,' how badly 'mistaken' was it?" As long as there is discretion to be exercised, Congress must have intended a distinction between removals which can be justified as presenting a serious or close question, and/or which are only technically defective, and those which are improvident in the sense that they present no credible statutory basis for jurisdiction in the federal court.

■ Litigants are presumed to know that federal courts are courts of limited jurisdiction and that subject matter jurisdiction cannot be conferred on them. Litigants are also supposed to know the difference between a procedural defect that can be waived by the absence of a timely motion to remand and the lack of subject matter jurisdiction that cannot be waived. Congress meant for removing parties to do more than to act in good faith and/or with honest motive. They are required to act *responsibly* and *reasonably* and to understand and accept the potential consequences of an improvident removal. Webster defines "improvident" as "wanting in foresight or forethought." Webster also gives the word "negligent" as a synonym for "improvident." It is impossible for this court to strip away all questions of subjectivity or of mental operation in deciding what is improvident and what is not. The idea of a "legitimate basis for believing," enunciated in *Daleske*, 17 F.3d at 325, may be fairly de-

scribed as a nebulous attempt to bridge the questions of *motivation* and *merit*. This court believes that in deciding whether to award fees under § 1447(c), the *merit* of the removal is much more important than the *motivation* for the removal. In fact, it is the overriding consideration.

■ It should be pointed out that as an appellate court examines a district court's decision for abuse of discretion, its approach will be somewhat different, depending upon whether the lower court awarded or did not award fees. It is obvious that there is a difference between *affirming* a court which, in an exercise of its discretion, *refused* to award fees and *reversing* a court's exercise of that same discretion in *awarding* fees. An example of the former is *Teitelbaum v. Soloski*, 843 F.Supp. 614, 616 (C.D.Cal.1994), holding that the "bare fact of remand" is not enough to justify attorneys fees when the defendants merely exceeded the 30–day removal deadline, a waivable defect. If that case had been appealed, the district court would have been affirmed. An example of the latter, very similar to the instant case, is *Morris*, 985 F.2d at 238, which started as a straightforward state court action, removed by defendants' hopeful but erroneous description of it as an ERISA case. The district court there found that the claim did not sufficiently relate to ERISA and thus did not present a federal question. After remanding it for lack of subject matter jurisdiction, the court awarded fees. The Sixth Circuit affirmed. Following the *Morris* approach, this court is not required to find wrongdoing on the part of these defendants in order to award fees to plaintiffs. Instead, this court evaluates this particular removal for its *merit*, starting and ending with the finding that this court has already made, namely, that the removal was improvident and of the "knee-jerk" variety.

While it is impossible to get away from the subjective component in the removing party's evaluation of his chances of a successful removal or from the subjectivity of the court itself as it examines the merits of the removal decision, there are some indicia that have an objective component. If an analogy to the "qualified immunity" defense in cases

brought under 42 U.S.C. § 1983 can be used to add an objective dimension, a court might ask: "Was this removal 'objectively reasonable'; or, in other words, was there existing persuasive case law to justify it?" A sheriff who is sued under § 1983 and who acted in relation to a prisoner in a way contrary to clear, recent binding precedent is not being "objectively reasonable" and does not enjoy qualified immunity. A removing defendant who tries something that failed yesterday and the day before can hardly be said to have been "objectively reasonable" in his decision to remove.

The idea behind the § 1447(c) attorneys fee is not to limit removals to those that are entirely risk-free but to obligate the defendant to make a risk assessment and to be prepared for the consequences. That assessment must, of course, include in its calculation the degree of exposure to attorneys fees under § 1447(c) or, in other words, the likelihood of the removal misfiring. It is obvious that any party who files any paper in a federal court should assess his exposure to Rule 11 sanctions. A similar assessment is necessary when a removal notice is about to be filed, although the risk of having to pay attorneys fees under § 1447(c) is, and should be, substantially greater than the risk of being hit with a Rule 11 sanction. A party should have the right to take the risk, but he nevertheless should take that risk only after "forethought." Defendants in this case had the right, a right which they exercised, to attempt an appellate review of the order of remand. Their risk of success there was minimal, and they, not unexpectedly, lost. Whether that loss in the Eleventh Circuit will cost them anything is a question for that court and not this one. The point, however, is that there was risk in the appellate process just as there was risk here. The words of § 1447(c) constitute a clear warning to defendants: "Remove at your peril!"

The court will now undertake gratuitously to provide a few examples of potentially erroneous removals that, in this court's opinion, would *not* trigger § 1447(c) liability for attorneys fees because this court could readily find the odds of a good removal sufficient to justify the attempt:

(1) A diversity case in which the plaintiff, either deliberately or inadvertently, is ambiguous in his statement of the *ad damnum* of the state court. If remanded under *Asociacion Nacional de Pescadores v. Dow Quimica,* 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994), after a federal court clarification determining that the $50,000 jurisdictional amount does not appear, the fault, if any, was that of the plaintiff, and the removing defendant should not be penalized by having to pay the plaintiff's attorneys fees.

(2) A diversity removal in which the plaintiff joined a non-diverse party whom defendants claim to have been fraudulently joined for the purpose of destroying diversity jurisdiction. If the existence of a viable cause of action against the non-diverse party is legitimately debatable under Rule 12(b)(6), F.R.Civ.P., even though the removing defendants ultimately lose the debate and the case is remanded, defendants probably should be excused from paying fees.

(3) A removal where the date of receipt of the "initial pleading" is honestly debatable. If the defendant removes more than 30 days from the date ultimately proven to be his date of receipt, or the date of receipt of the "first served defendant," he may very well avoid attorneys fees.

(4) A case which contains "one or more otherwise non-removable claims or causes of action," which is removed under 28 U.S.C. § 1441(c), and which is remanded only because the district court concludes that "state law predominates." If the question of whether federal or state law predominates is a truly debatable question, defendant should not have to worry about attorneys fees under § 1447(c) as he assesses the risk of a removal. The same type analysis applies to a removal and remand under 28 U.S.C. § 1367(c), in which the district court declines to exercise its supplemental jurisdiction.

(5) A case filed in a state court by an employee claiming retaliation by the employer for the employee's having pursued a worker's compensation claim. The Fifth

Circuit in *Jones v. Roadway Exp., Inc.,* 931 F.2d 1086 (5th Cir.1991), held that such case "arises under" the worker's compensation laws and is therefore exclusively for the state court under 28 U.S.C. § 1445(c). The Seventh Circuit, however, in *Spearman v. Exxon Co. USA, Inc.,* 16 F.3d 722 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994), would deny a motion to remand. Different judges on this very court have gone different ways in this situation, making it unlikely that a removing employer could not safely risk drawing the wrong judge without also biting the fees bullet.

(6) The residency of the removing defendant is honestly debatable as a fact question of intent. He says he was a nonresident when the suit was filed, and he moved across the state line shortly after the transaction complained of. If he loses a mini-trial on this threshold question, he should not have to pay attorneys fees, that is, unless his ostensible change of residence after the cause of action arose was no more than a ploy to escape the state court.

(7) A close question under § 1447(c) might be presented by the existence of what is clearly a procedural defect that can be waived. Such a defect would provide an unstable foundation for the award of fees, unlike a removal taken without the ability to demonstrate subject matter jurisdiction. An interesting example of the former might be a case in which a defendant removes a diversity case more than one year after it was filed in the state court, thus violating 28 U.S.C. § 1446(b), a statutory provision clearly designed to make diversity removal impossible after the case abides a year in the state court. The Fifth Circuit has held that such a defect is procedural only and therefore must be raised, if at all, by plaintiff within the 30–day period provided by 28 U.S.C. § 1447(c). *Barnes v. Westinghouse Elec. Corp.,* 962 F.2d 513 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992). To the contrary, the Sixth Circuit holds that such a diversity removal delayed more than one year presents a substantive or absolute bar to federal jurisdiction. *Brock v. Syntex Labs., Inc.,* 7 F.3d 232 (6th Cir.1993). Obviously, if a removing defendant within the Eleventh Circuit tries to sneak up on an unwary state court plaintiff with a long-pending case, there is risk for the defendant that the plaintiff will wake up within the 30–day period, or that the district court will wake up *sua sponte* and will undertake to predict that the Eleventh Circuit will join the Sixth. If the district court should choose the Sixth Circuit for its guide, the removal might be deemed "improvident" and the case remanded. *Rothner v. City of Chicago,* 879 F.2d 1402, 1411 (7th Cir. 1989). But, an argument certainly could be made for defendant's taking the risk under such circumstances, not only in order to test the competence of the plaintiff's lawyer but to find out whether within the Eleventh Circuit this is only a "procedural" defect that can be waived. Such a knowing undertaking, if successful, might be in the category of a gamble that was preceded by the requisite "forethought," but, then again, it might not overcome the presumption in favor of an award of attorneys fees under § 1447(c).

■ Less than hypothetical and, in fact, bearing a remarkable similarity to the instant case, is *Morris v. Bridgestone/Firestone, Inc.,* 985 F.2d 238 (6th Cir.1993), a case previously cited in which the Sixth Circuit approved attorneys fees without finding the slightest degree of fault of any kind on the part of the removing defendant. The complaint had been filed in the state court, invoked purely state law and claimed a wrongful termination of employment. The removing defendant asserted that plaintiff's claim for lost pension benefits turned the controversy into one sufficiently related to ERISA to create a federal question. *Id.* at 239. The lower court held that the purported loss of pension benefits was pertinent only to damages and found that ERISA was not implicated. After remand, the district court ordered defendant to pay attorneys fees pursuant to § 1447(c). The Sixth Circuit affirmed but expressly refused to find that defendant had engaged in any improper tactic. Instead, it found, if only implicitly, that

a *risky* removal, followed by remand, warrants an award of attorneys fees. This court, dealing here with a defendant's misnomer of a case as an ERISA case, agrees with the Sixth Circuit.

█ If the reader has not already so deduced, the foregoing discussion leads this court to conclude that the decision as to whether to award fees under § 1447(c) turns primarily, if not solely, on the *merit* of the removal. Every gambler occasionally loses. Before he rolls the dice he knows that he might come up "snake eyes." Some gamblers, such as the removing defendants in this case, are better at assessing risk than others. A defendant's risk assessment must be intelligent as well as honest. There is no place for playing a hunch or for simply betting on which judge the case will be assigned to. The risk assessment must include, especially in purported ERISA removals, the virtual impossibility of doing anything to prevent the remand of a case over which state courts admittedly have concurrent jurisdiction, even if the remand is erroneous. See *Harris v. Blue Cross/Blue Shield,* 951 F.2d 325 (11th Cir.1992); *In re Decorator Indus., Inc.,* 980 F.2d 1371 (11th Cir.1992); *Glasser v. Amalgamated Workers Union Local 88,* 806 F.2d 1539 (11th Cir.1986). This is why "good faith" is not a defense to a claim for § 1447(c) fees. Defendants in the instant case took a calculated (or possibly an uncalculated) risk, presumptively understanding that they had the burden both to plead and to prove a basis for the removal and not to come up with an after-the-fact rationalization. Although the "totality of circumstances" has a broad circumference, its key element is the degree of merit in the removal, enhanced by the presumption in favor of awarding fees in the event the removal can be fairly described as "improvident." Congress meant § 1447(c) to be a signal *that in every removal there is risk of having to pay the plaintiff's reasonable attorneys fees.*

### The Amount to be Awarded

█ *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), is tattered and torn. It has been virtually eliminated by *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and cases like it which make the "lodestar" the dominant, if not the exclusive factor in fixing an attorneys fee. In this case plaintiffs' counsel reasonably spent the lawyer-hours they claim. They ask nothing for their appellate work. They explored no blind alleys. They are lawyers who are skilled, reputable and experienced in both insurance and ERISA litigation. Their respective hourly rates, supported by affidavits, reflect the "going rate" for their services and form a fair basis for arriving at the "lodestar." On these raw facts the bottom line becomes a matter of simple arithmetic. There is no basis for challenging the sum sought and proven by uncontradicted affidavits in the amount of $10,674.69.