**SEMINOLE COUNTY, City of Casselberry, Florida, Plaintiffs,**

v.

**PINTER ENTERPRISES, INC., Michael E. Pinter, et al., Defendants.**

**No. 6:00CV436ORL–28A.**

United States District Court, M.D. Florida, Orlando Division.

Sept. 26, 2000.

Robert Alexander McMillan, Seminole County Attorney's office, Sanford, FL, Gregory Thomas Stewart, Nabors, Giblin & Nickerson, P.A., Tallahassee, FL, for Seminole County.

Donna Lynne Surratt-McIntosh, Stenstrom, McIntosh, Colbert, Whigham & Simmons, P.A., Sanford, FL, F. Scott Pendley, Dean, Ringers, Morgan and Lawton, P.A., Orlando, FL, for City of Casselberry, Fla.

Jay W. Small, Wilson, Leavitt & Small, P.A., Orlando, FL, Robert H. Freilich, Freilich, Leitner & Carlisle, Kansas City, MO, for Pinter Enterprises, Inc., Michael E. Pinter, Jr., Mary C. Pinter.

### ORDER

PRESNELL, District Judge.

This cause came on for consideration of the Report and Recommendation of the Magistrate Judge (Doc. 36) which recommended that Defendant's Amended Motion to Remand (Doc. 21) be granted. The Court has considered Plaintiff's Objections (Doc. 39) to the Report and Recommendation and Defendant's Response thereto (Doc.40). Upon consideration of the above, the Court confirms that part of the Report and Recommendation which recommends that Defendant's Amended Motion to Remand be granted, but declines to adopt that portion of the Report and Recommendation which awards costs under 28 U.S.C. Sec. 1447(c). It is, therefore

**ORDERED AND ADJUDGED** that Defendant's Amended Motion to Remand is GRANTED. The Clerk is directed to remand this case to state court and, thereafter, close the file.

### REPORT AND RECOMMENDATION

SPAULDING, United States Magistrate Judge.

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION: DEFENDANTS' AMENDED MOTION TO REMAND (Doc. No. 21)**
>
> **FILED: April 21, 2000**
>
> **THEREON** it is **RESPECTFULLY RECOMMENDED** that the motion be **GRANTED.**

### I. *PROCEDURAL HISTORY*

Pinter Enterprises, Inc., Michael E. Pinter, Jr., Mary C. Pinter and Michael E. Pinter, Jr., as joint trustees (collectively "the Pinters"), the defendants, own an adult entertainment establishment known as Club Juana. In June, 1999, the plaintiffs, Seminole County and the City of Casselberry (collectively "the Local Governments") passed several public decency ordinances that negatively affected Club Juana. (Doc. No. 3, Exhibits B–D). In

November, 1999, in reaction to the ordinances, the Pinters filed a notice of intent to file a claim under Chapter 70 of the Florida Statutes, known as the Bert J. Harris, Jr., Private Property Rights Protection Act ("Bert Harris Act"). (Doc. No. 3, Exhibits E & F).

On January 26, 2000, in the Eighteenth Circuit Court of the State of Florida, the Local Governments filed a complaint against the Pinters, seeking a declaratory judgment under Chapter 86 of the Florida Statutes. (Doc. No. 3). The complaint sought a ruling as to whether the Bert Harris Act, applied to the Local Governments' ordinances.

The Pinters counterclaimed for violations under the Bert Harris Act, inverse condemnation under the Florida Constitution and the United States Constitution, and violations of 42 U.S.C. § 1983. including: violations of procedural due process under the United States Constitution, violations of substantive due process under the Florida Constitution and the United States Constitution, and violations of equal protection under the United States Constitution. (Doc. No. 4).

On April 4, 2000, the Local Governments, the plaintiffs in the state court case, filed a Joint notice of removal ("Removal Notice") in this Court with an accompanying memorandum in support thereof. (Doc. Nos. 1 & 2). Simultaneously with the filing of the Removal Notice, the Local Governments also filed a motion to dismiss the Pinters' counterclaims with an accompanying memorandum of law. (Doc. Nos. 6 & 7). The Local Governments supplemented the motion to dismiss on June 21, 2000. (Doc. No. 31). On April 21, 2000, the Pinters filed an amended motion to remand (Doc. No. 21). On May 17, 2000, the Local Governments filed a memorandum in opposition to the Pinters' amended motion to remand. (Doc. No. 27). Finally, on June 27, 2000, the Pinters responded by filing a reply memorandum to the Local Governments' opposition memorandum, addressing the issue of realignment. (Doc. No. 34). The foregoing motions and memoranda have been referred to me for issuance of a report and recommendation.

## II. STATEMENT OF FACTS

The Pinters' notice of intent to file a claim under the Bert Harris Act alleges that the ordinances impose an inordinate burden on the Pinters' vested rights in real property, which prevents the Pinters from attaining their reasonable investment backed expectations. (Doc. No. 3, Exhibits E & F, at 1). The Pinters allege that the ordinances decreased the market value, income stream, and net present value of the property, and that they are entitled to damages for the loss of their reasonable investment backed expectations in the amount of $3,387,640. (Id. at 8). The Pinters allocate the alleged damages as follows: $344,000 for the difference in market value of the real property before and after the adoption of the ordinances; $271,700 for the loss in value of movable assets after the adoption of the ordinances; and $2,871,940 for the net present value of the property based on a five-year weighted average of the net operating income. (Id. at 11)

The Local Governments' complaint alleges that a legitimate question exists regarding whether the Bert Harris Act applies to the ordinances in question. (Doc. No. 3, at 6–8). The complaint asks the state court to rule that the Bert Harris Act does not apply to the ordinances and toll the 180–day–period under the Bert Harris Act, in which the Local Governments must respond to the Pinters' notice of intent to file a claim, until a final determination is made regarding the applicability of the Bert Harris Act. (Id. at 8)

The Pinters filed counterclaims to the complaint because they feared losing them based upon the compulsory counterclaim rule. (Doc. No. 34, at 9). The counterclaims arise out of the same operative facts and, as stated in section I, *supra*, allege claims under the Bert Harris Act, inverse condemnation claims under the Florida and United States Constitutions, and various Constitutional claims under 42 U.S.C. § 1983. (Doc. No. 4).

The Removal Notice does not request that this Court realign the Local Governments as the defendants for purposes of removal. (Doc. No. 1). Instead, the Removal Notice refers to the Local Governments as the defendants and relies on the Pinters' federal counterclaims as the basis for removal. (*Id.* at ¶ 12). The Pinters' amended motion to remand asserts that the Local Governments have improperly removed this case, and requests that the Court award the Pinters their attorneys' fees and expenses incurred contesting the case's removal. (Doc. No. 21, at ¶ 5). The Local Governments first addressed the issue of realignment in their memorandum opposing the Pinters' amended motion to remand. (Doc. No. 27). The Local Governments' motion to dismiss primarily asserts that the Pinters' federal counterclaims should be dismissed because they fail to state a claim and are not ripe. (Doc. No. 6). The Local Governments' supplemental motion to dismiss asserts that the Pinters' Bert Harris Act counterclaim should be dismissed based on a procedural deficiency. (Doc. No. 31).

## A. The Bert Harris Act

The Florida Legislature adopted the Bert Harris Act with the intention of creating a separate and distinct cause of action from the law of takings. *See* § 70.001(1), Fla. Stat. (1999). The Bert Harris Act provides private property owners with an avenue for redress against state and political entities if the property owner feels that a law, regulation, or ordinance of an entity inordinately burdens, restricts, or limits the citizen's private property rights without amounting to a taking under the Florida Constitution or the United States Constitution. *See id.* The Bert Harris Act requires a citizen seeking compensation under the Bert Harris Act to, not less than 180 days prior to filing a complaint, present the claim in writing to the head of the governmental entity. *See* § 70.001(4)(a), Fla. Stat. (1999). During the 180–day–notice period, the governmental entity must make a written settlement offer to the property owner. *See* § 70.001(4)(c), Fla. Stat. (1999). The Bert Harris Act identifies eleven possible offers that a governmental entity can make, including making no change in the governmental entity's action. *See id.*[1]

During the 180–day–notice period, unless the property owner accepts a settlement offer, the governmental entity is required to issue a written ripeness decision that identifies the allowable uses for the property. *See* § 70.001(5)(a), Fla. Stat. (1999). If the governmental entity fails to issue a ripeness opinion during the 180–

---

**1.** The other ten possible offers are: "1. An adjustment of land development or permit standards or other provisions controlling the development or use of land. 2. Increases or modifications in the density, intensity, or use of areas of development. 3. The transfer of development rights. 4. Land swaps or exchanges. 5. Mitigation, including payments in lieu of onsite mitigation. 6. Location on the least sensitive portion of the property. 7. Conditioning the amount of development or use permitted. 8. A requirement that issues be addressed on a more comprehensive basis than a single proposed use or development. 9. Issuance of the development order, a variance, special exception or other extraordinary relief. 10. Purchase of the real property, or an interest therein, by an appropriate governmental entity . . . . " *Id.*

day–notice period, then that failure ripens the prior action of the governmental entity, and operates as a ripeness decision that has been rejected by the property owner. The ripeness decision, as a matter of law, is the last prerequisite to judicial review. *See id.* If the property owner rejects the settlement offer and the ripeness decision of the governmental entity, then the property owner may file a claim for compensation in the circuit court. *See* § 70.001(5)(b), Fla. Stat. (1999). If the circuit court determines that the action of the governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property, the property owner is entitled to relief. *See* § 70.001(2), Fla. Stat. (1999). Relief under the Bert Harris Act may include compensation for the actual diminishment of the fair market value of the real property caused by the governmental entity's action. *See id.*

## III. *STANDARD OF REVIEW*

The issue of whether this Court has jurisdiction over this case must be determined before this Court is permitted to address the Local Governments' motions to dismiss. *See University of S. Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999) (citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1556–57 (11th Cir.1989) (holding that when an action is removed from state court, the district court must first determine whether it has original jurisdiction over the plaintiff's claims)). For purposes of this case, the issue of jurisdiction turns on whether the Local Governments properly removed the case.

■ The party seeking removal has the burden of establishing that removal is proper. *See, e.g., McNutt v. General Motors Accept. Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir.1993); *Opnad Fund, Inc. v. Watson,* 863 F.Supp. 328, 330 (S.D.Miss.1994). Any close questions regarding the propriety of removal are resolved in favor of remanding the case to the state court. *See Laughlin v. Prudential Ins. Co.,* 882 F.2d 187, 190 (5th Cir.1989). A presumption in favor of remand is necessary because if a federal court addresses the merits of a pending motion in a removed case where subject matter jurisdiction does not exist, the federal court deprives the state court from its Constitutional right to resolve controversies in its own courts. *See University of S. Alabama,* 168 F.3d at 411.

■ The removal statute provides:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending. . . .
28 U.S.C. § 1441(a). Accordingly, only defendants may remove an action from state to federal court.

■ Case law interpreting the removal statute clearly states that plaintiff/counter-defendants are not automatically permitted to act as defendants for purposes of utilizing the removal statute. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104–05, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *see also Dixie Elec. Coop. v. Citizens of State of Alabama,* 789 F.2d 852, 857 (11th Cir.1986); *Scott v. Communications Servs., Inc.,* 762 F.Supp. 147 (S.D.Tex.1991), *aff'd without op.,* 961 F.2d 1571 (5th Cir.1992); *Opnad Fund, Inc.,* 863 F.Supp. at 331 (citing *Tindle v. Ledbetter,* 627 F.Supp. 406 (M.D.La.1986) (holding that only a true defendant, not a counterclaim defendant, may remove a case to federal court)). Federal law deter-

mines which party is the plaintiff and which party is the defendant. *See Chicago R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 580, 74 S.Ct. 290, 98 L.Ed. 317 (1954); *see also Sheets,* 313 U.S. at 104, 61 S.Ct. 868.

The Supreme Court has established a test for determining the proper posture of parties for purposes of removal. *See Mason City & Ft. D.R. Co. v. Boynton,* 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629 (1907). In *Mason City,* an Iowa statute governing condemnation actions provided that in condemnation actions the landowner is the plaintiff and the condemnor is the defendant. Despite the state statute, the Court determined that the "mainspring of the proceedings" was the condemnor's intent to achieve a particular result, and because "the institution and continuance of the proceedings depend[ed] upon [the condemnor's will]," the Court deemed the condemnor, rather than the landowner, to be the plaintiff for removal purposes. *Id.* at 580, 27 S.Ct. 321; *accord Stude,* 346 U.S. at 579–80, 74 S.Ct. 290 (reaffirming the holding in *Mason City* ).

## IV. *ANALYSIS*

The Local Governments have the burden of establishing that removal is proper, because they filed the Removal Notice. The Local Governments' Removal Notice and memorandum in support thereof do not request that this Court address the issue of realignment. Instead, the Removal Notice refers to the Local Governments as the defendants, despite being the plaintiffs/counter-defendants in the state court action. Based upon the face of the Removal Notice and the accompanying memorandum, the Local Governments fail to meet their burden of establishing that removal is proper. However, the Local Governments assert, in their memorandum opposing the Pinters' amended motion to remand, that they are entitled to be realigned as the defendants for purposes of removal. The Pinters respond in

their reply memorandum that the Local Governments have waived the opportunity to request realignment by not requesting it in their Removal Notice. Additionally, the Pinters argue that even if this Court concludes that the right to realignment was not waived, the Local Governments are not entitled to realignment, because realignment only applies to diversity cases.

### A. *The realignment request must be addressed.*

■ A recent case from a district court in the Eleventh Circuit addresses the issue of whether a party seeking removal waives the right to realignment by not requesting realignment in the notice of removal. *See Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.,* 105 F.Supp.2d 1336, 1339–40 (N.D.Ga.2000). In *Premier Holidays Int'l, Inc.,* the party moving for removal failed to request realignment in its notice of removal. The removing party first addressed the issue of realignment in its response to the other party's motion for remand. The party opposing removal argued that the removing party waived the right to request realignment. However, the court rejected the waiver argument in a footnote, stating as follows:

> The parties have not cited, and the court has not found, any legal authority where a court holds that removal is improper because the realignment request was not made in the removal petition. Actrade points out that such an argument would put form (a purported defect in the removal petition itself) over substance (the true alignment of the parties as determined by the court).

*Id.* at 1342, n. 7. Relying on this rationale, I will address the realignment question despite the Local Governments' failure to raise the issue in the Removal Notice, and the memorandum in support thereof.

■ Realignment does not only apply to diversity cases. *See Development Fin. Corp. v. Alpha Housing & Health Care, Inc.,* 54 F.3d 156, 159–60 (3d Cir.1995) (citing its ruling in *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.,* 15 F.3d 1230, 1240–41 (3d Cir.1994)). In *Texas E. Transmission Corp.,* the court determined that a district court had "erroneously reasoned that realignment was a principle associated exclusively with diversity jurisdiction." *Texas E. Transmission Corp.,* 15 F.3d at 1242. Realignment is "a broader principle of judicial interpretation of statutes conferring jurisdiction in federal courts, where the conferral of jurisdiction is predicated upon the adversarial relationship of the parties." *Id.* at 1240. Therefore, "where party designations have jurisdictional consequences," the court has a duty to realign the parties before determining jurisdiction. *Id.* at 1241; *see also Stude,* 346 U.S. 574, 74 S.Ct. 290 (1954) (realigning parties for jurisdictional analysis under the removal statute, 28 U.S.C. § 1440).

In the instant case, the determination of whether removal is proper turns on whether the Local Governments should be realigned as the defendants. Therefore, this Court must address the issue of realignment.

*B. Based on the law, the parties should not be realigned.*

This case is properly classified as a regulatory takings case. While I have been unable to locate any regulatory takings cases that are instructive on the issue of realignment, the *Mason City* and *Stude* cases are both condemnation cases. A condemnation case involving the physical taking of land can be sufficiently analogized to an inverse condemnation case involving the alleged regulatory taking of land. *See, e.g., United States v. Clarke,* 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

In *Clarke,* the Court explained:

The phrase "inverse condemnation" appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted. As defined by one land use planning expert, "[i]nverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" D. Hagman, Urban Planning and Land Development Control Law 328 (1971) (emphasis added). A landowner is entitled to bring such an action as a result of the "self-executing character of the constitutional provision with respect to compensation...." See 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed.1972). A condemnation proceeding, by contrast, typically involves an action by the condemnor to effect a taking and acquire title. The phrase "inverse condemnation," as a common understanding of that phrase would suggest, simply describes an action that is the "inverse" or "reverse" of a condemnation proceeding.

*Id.* at 257, 100 S.Ct. 1127.

In both *Mason City* and *Stude,* the Court determined that the party trying to take the land for its purposes should be considered the plaintiff. The *Mason City* Court ruled this way despite the labels attached by the state statute, because the Court determined that the intent of the condemnor to obtain the land was the "mainspring of the proceedings." *Mason City,* 204 U.S. at 580, 27 S.Ct. 321.

■ In this case the Local Governments' ordinances allegedly amount to a regulatory taking or an inordinate burden that is compensable under the Bert Harris Act. The "mainspring of the proceedings" is the ordinances' restrictions on the use of the Pinters' property; thus the Local Governments' should remain the plaintiffs in this case for purposes of removal. Therefore, this case should be remanded to the state court, because as explained in section IV, *supra*, a plaintiff/counter-defendant may not remove a case to federal court. Since this Court lacks jurisdiction, the state court must address the Local Governments' motions to dismiss.

## VI. *ATTORNEYS' FEES AND COSTS*

Whether to award costs under 28 U.S.C. § 1447(c) is a matter within the sole discretion of the Court. *See Liebig v. DeJoy*, 814 F.Supp. 1074, 1077 (M.D.Fla.1993); *see also Gray v. New York Life Ins. Co.*, 906 F.Supp. 628, 637 (N.D.Ala.1995) ("whether to award fees under § 1447(c) turns primarily, if not solely, on the merit of the removal"). In *Gray*, the court awarded substantial fees and costs after remanding a case removed under the complete preemption theory. In support of its decision the *Gray* court noted, "[c]ongress meant § 1447(c) to be a signal that in every removal there is a risk of having to pay the plaintiff's reasonable attorneys fees." 906 F.Supp. at 637.

Here, the Local Governments have not stated a proper case for removal, because the law does not justify realignment. Therefore, awarding the Pinters their expenses and attorneys' fees is appropriate.

### *RECOMMENDATION*

For the reasons stated herein, the Local Governments have not satisfied their burden of proving that removal of this case to federal court was proper. Accordingly, I respectfully recommend that the Court GRANT the Pinters' amended motion to remand (Doc. No. 21). I further recommend that the Court GRANT the Pinters' request for just costs and any actual expenses, including attorneys fees, incurred as a result of the improper removal of this case. I recommend that the Court require counsel to confer in good faith to resolve the amount of fees and expenses to be paid, failing which the Court should require the Pinters to file a motion for the award of fees and costs, supported by appropriate evidence, within thirty (30) days after the order is issued on the report and recommendation. Finally, I respectfully recommend that the Court direct the Clerk of Court to remand the case to state court and, thereafter, to close the file.

**Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.**