**Mary L. GRACE, Plaintiff,**

v.

**INTERSTATE LIFE & ACCIDENT; INS. CO., et al., Defendants.**

**Civil Action No. 95–D–1458–S.**

United States District Court, M.D. Alabama, Southern Division.

Feb. 12, 1996.

---

Frank M. Wilson, P. Leigh O'Dell, Montgomery, AL, for plaintiff.

Jere C. Segrest, Kevin Walding, Alan C. Livingston, Dothan, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the plaintiff's motion filed December 8, 1995, to remand the above-styled action to the Circuit Court of Houston County, Alabama, and to award the plaintiff attorney's fees and costs. On December 27, 1995, the defendants responded in opposition to the plaintiff's motion. On January 25, 1996, the plaintiff filed a reply brief. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that the plaintiff's motion to remand is due to be granted but that the plaintiff's motion for attorney's fees and costs is due to be denied.

### STATEMENT OF FACTS

Plaintiff Mary L. Grace ("Ms. Grace") alleges the following three counts in her complaint: (1) fraudulent suppression, (2) fraudulent misrepresentation, and (3) negligent hiring, supervision, and training. Two of these counts involve the actions or inaction of defendant James Roney ("Mr. Roney"), an employee of defendants Interstate Life & Accident Insurance Company, Gulf Life Insurance Company, and American General Life & Accident Insurance Company (together "the corporate defendants").

Specifically, Ms. Grace contends that Mr. Roney, while acting as an agent for the corporate defendants, represented to her that the insurance policy in question, Policy No. 25106062, issued on or about April 14, 1975, ("disputed policy") would be beneficial to her although he allegedly knew or should have known that said representation was false. She also contends that Mr. Roney had a duty to disclose that the disputed policy with the corporate defendants would become unnecessary and duplicated benefits available to her under Medicare and Medicaid when she reached the age of sixty-five. Furthermore, she notes that it was illegal for him to sell her the disputed policy after she turned sixty-five.

Mr. Roney is the only defendant who is a citizen of the state of Alabama. As such, the parties agree that his presence as a party defendant destroys the diversity jurisdiction that the court would otherwise have over the above-styled action. The defendants request the court to either disregard Mr. Roney's citizenship or dismiss him as a party defendant and exercise diversity jurisdiction under 28 U.S.C. § 1332(a).

First, they argue that Mr. Roney should be dismissed from the lawsuit because he was fraudulently joined as a party defendant for the sole purpose of destroying diversity jurisdiction. In the alternative, they argue that Mr. Roney's citizenship should be disregarded for purposes of determining diversity jurisdiction because he is being sued in his capacity as an agent rather than as an individual, thus making him a formal, nominal, or sham party to this lawsuit. Furthermore, even if the court decides that it cannot exercise diversity jurisdiction, the corporate defendants argue that the court has federal question jurisdiction because the complaint, though grounded in state law, involves substantial federal questions regarding the meaning and interpretation of certain federal statutes.

### DISCUSSION

This action was removed by the defendants from the Circuit Court of Houston County on the basis of diversity jurisdiction.[1] Def.s'

1. Section 1441 states in part that "... any civil action brought in a State court of which district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending...." 28 U.S.C. § 1441(a). Section 1441(b) further states

Notice of Removal at 1. A district court has original jurisdiction over all cases where citizens of different states are involved and the amount in controversy exceeds $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). When federal subject matter jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the opposing parties. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978).

## A. Fraudulent Joinder

■ The court cannot exercise diversity jurisdiction unless it either dismisses Mr. Roney as a party defendant or disregards the presence of Mr. Roney as a party defendant for purposes of determining diversity jurisdiction. As noted above, the defendants argue that Mr. Roney was fraudulently joined for the purpose of destroying diversity jurisdiction and should be dismissed as a party defendant. The doctrine of fraudulent joinder is applicable when the plaintiff, a citizen of the forum state, joins a resident citizen defendant with a nonresident citizen defendant. The joinder is fraudulent if the plaintiff fails to state a cause of action against the resident defendant and the failure is obvious according to the settled rules of the state. *See Parks v. New York Times,* 308 F.2d 474, 477 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). In *Parks,* the court held that

> [t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard. One or the other at least would be required before it could be said that there was no real intention to get a joint judgment and that there was no colorable ground for so claiming.

*Id.* at 478.

■ When determining whether a defendant was fraudulently joined, the court must evaluate all factual issues and substantive law in favor of the plaintiff. *Coker v. Amoco Oil Co.,* 709 F.2d 1433 (11th Cir.1983). If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court. *Coker,* 709 F.2d at 1440 (citing *Parks,* 308 F.2d at 477–78). "The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989) (citing *Coker,* 709 F.2d at 1440). The determination of whether a non-diverse defendant has been fraudulently joined to destroy diversity should be based on the plaintiff's pleadings at the time of removal. *Autrey v. United Cos. Lending Corp.,* 872 F.Supp. 925, 929 (M.D.Ala.1995) (De Ment, J.).

■ Ms. Grace makes two separate claims against Mr. Roney in his capacity as an agent for the corporate defendants, one alleging fraudulent suppression and the other alleging fraudulent misrepresentation. The defendants assert that it is legally impossible for Ms. Grace to prevail against Mr. Roney under Alabama law on her claims alleging fraudulent suppression of a material fact and fraudulent misrepresentation of a material fact. If it is possible for Ms. Grace to state a cause of action under either theory, then the defendants cannot prove that Mr. Roney was fraudulently joined. The court will first address the fraudulent suppression claim.

■ The Alabama Code provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala.Code § 6–5–102 (1993).[2] As stated above, under § 6–5–

---

that a case shall be removable based on diversity "... only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

2. To succeed on a fraudulent suppression claim, the plaintiff must show: "(1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties, or because of the particular circumstances of the case, and (3) that the plain-

102, a duty to communicate may arise through either a confidential relationship or from the particular circumstances of the case. Application of the "particular circumstances" test

> requires a case-by-case consideration of several factors. "A duty to speak depends upon the relation of the parties, the value [materiality] of the particular fact, the relative knowledge of the parties, and other circumstances. Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and indeed, the words of the statute itself counsel flexibility."

*Trio Broadcasters, Inc. v. Ward,* 495 So.2d 621, 624 (Ala.1986) (citations omitted). The determination of whether a duty to disclose exists under § 6–5–102 generally is an issue for the jury. *Oxford Furn. Companies v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1124 (11th Cir.1993) (citation omitted).

The defendants first contend that Mr. Roney was not in a confidential relationship with Ms. Grace, and, further, that the particular circumstances did not impose a duty to disclose. In support of their position, they argue that Mr. Roney did not sell the disputed policy to Ms. Grace, but merely collected the premiums. Mr. Roney's Aff. at 2. However, it is clear that Mr. Roney was collecting premiums on several of Ms. Grace's policies, including the disputed policy, because he took over another insurance agent's policies nearly nine and a half years ago. *Id.* at 1. Thus, Mr. Roney asks the court to determine as a matter of law that, even though he was Ms. Grace's insurance agent on several insurance policies for nearly nine and a half years, he did not have a duty to disclose that the disputed policy became unnecessary upon her reaching the age of sixty-five or that it

was illegal to sell her such a policy after she turned sixty-five.

As noted above, the "particular circumstances" language requires a case-by-case consideration of the particular facts involved in the action. Furthermore, the test to determine whether a duty of disclosure exists requires a flexible, not a rigid approach. With these principles in mind, the court finds that the facts alleged reveal a relationship between Ms. Grace and Mr. Roney sufficient to raise an issue of fact as to whether a duty to disclose existed based upon "... the relation of the parties, the value of the particular fact suppressed, the relative knowledge of the parties, and other circumstances," especially given that this determination is generally a question of fact for the jury to decide. *Id.* at 1124. In other words, a colorable basis exists that Mr. Roney's silence as to the necessity of the disputed policy after Ms. Grace turned sixty-five made a difference in her decision of whether she would maintain the disputed policy after reaching sixty-five. In fact, there is little doubt that she would have cancelled the disputed policy had this fact been conveyed.

■ The defendants further argue that even if a duty to disclose existed between Mr. Roney and Ms. Grace because of their relationship, his joinder as a party defendant was fraudulent because the facts he allegedly suppressed are incorrect and/or irrelevant. They argue that Alabama law regarding suppression claims implies that the failure to disclose must involve a *true* and material fact. *See Wilson v. Brown,* 496 So.2d 756, 759 (Ala.1986); *Cornelius v. Austin,* 542 So.2d 1220, 1223 (Ala.1989). As such, the defendants contend that the disputed policy was not "unnecessary" and did not "duplicate benefits" available to her under Medicare and Medicaid because she still received a "benefit" under the disputed policy even when covered by other insurance.[3]

---

tiff suffered actual injury as a result of the suppression." *Boswell v. Liberty Nat. Life Ins. Co.,* 643 So.2d 580, 581 (Ala.1994) (citations omitted).

**3.** The defendants refer the court to a copy of the policy under header "Insurance With Other Insurers." *See* Def.s' Exh. 1 to Exh. A. The text under this header provides as follows:

> If there be other valid coverage, not with this Company, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which this Company has not been given written notice prior to the occurrence or commencement of loss, the only liability under this policy shall be for such proportion of the loss as the amount which would otherwise have been payable hereunder

It is clear, however, that some benefits of the disputed policy were duplicated when Ms. Grace turned sixty-five and became eligible for Medicare and Medicaid benefits. Thus, the court finds that Mr. Roney concealed a true material fact when he failed to disclose to Ms. Grace that some of her benefits would be duplicated when she reached the age of sixty-five. In fact, Ms. Grace would have probably wanted to evaluate for herself whether the disputed policy had become "unnecessary" based on all the information that Mr. Roney allegedly should have provided her at the time she reached the age of sixty-five. Thus, even though the disputed policy provided some benefit in addition to the Medicare and Medicaid coverage available to Ms. Grace, the court finds that some benefits previously available to Ms. Grace under the disputed policy were duplicated by Medicare and Medicaid. Thus, the court finds that a jury could find that Mr. Roney concealed a true material fact because a reasonable juror could find that the disputed policy "duplicated benefits" and made the disputed policy "unnecessary." Therefore, the court finds the defendants' fraudulent joinder argument unpersuasive.

## B. *Formal, Nominal, or Sham Party*

 In the alternative to dismissing Mr. Roney as a party defendant under the doctrine of fraudulent joinder, the defendants contend that his citizenship should be disregarded for purposes of determining diversity jurisdiction. In support of this contention, the defendants argue that Ms. Grace's claims are phrased in such a way that Mr. Roney's actions or inaction were taken in his capacity as an agent of the corporate defendants.[4] In other words, the defendants contend that Roney may only be liable in his capacity as an agent to the corporate defendants rather than as an individual. According to the defendants, this makes Mr. Roney merely a formal or nominal party, and as such, his citizenship should be disregarded for purposes of determining diversity jurisdiction.

The Supreme Court of Alabama has noted that

> [i]t is thoroughly well settled that a man is personally liable for all torts committed by him, constituting in misfeasance—as fraud, conversion, acts done negligently, etc.— notwithstanding he may have acted as the agent or under the direction of another.

*Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala. 1983); *Ex Parte Charles Bell Pontiac–Buick–Cadillac–GMC, Inc.,* 496 So.2d 774, 775 (Ala.1986). Based on the holding of the Supreme Court of Alabama in *Crigler,* it is clear that Mr. Roney can be sued in his individual capacity for fraudulent suppression. Furthermore, the court finds that there is a possibility that a state court could find that Ms. Grace's complaint states a cause of action against Mr. Roney. Therefore, the court finds unpersuasive the defendants contention that Ms. Grace's motion to remand should be denied based on the theory that Mr. Roney is a nominal party.

## C. *Federal Question Jurisdiction*

 The defendants last argue that, if the court rejects fraudulent joinder and the nominal party status of Mr. Roney as a basis to exercise diversity jurisdiction, the court still has federal question jurisdiction. While the defendants recognize that the complaint

---

plus the total of the like amounts under all such other valid coverages for the same loss of which this Company had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall exceed the pro rata portion of the amount so determined. For the purpose of applying this provision of service basis, the "like amount" of such other coverage shall be taken as the amount which the service rendered would have cost in the absence of such coverage.

While this provision appears to provide a formula to provide some benefit for insureds with other insurance policies, it is clear that it does not provide the same benefit to a person covered by Medicare and Medicaid as it does to a person who is not covered by Medicare and Medicaid.

4. The complaint states in part that "[o]n numerous occasions, Defendant Roney and other agents of Defendants, called on the Plaintiff to collect premiums for the policy of insurance." Pl.'s Compl. at ¶ 20. The complaint further states that "[o]n each such occasion since the Plaintiff reached the age of 65, Defendants and their agents, Roney and others, were under a duty to disclose to Plaintiff that the [disputed] policy ... was unnecessary and duplicated benefits available to her...." Id. at ¶ 21.

clearly asserts state law claims, they contend that the state law claims are premised upon and involve important questions about federal statutes. Specifically, the defendants argue that the Ms. Grace's civil action arises from an alleged violation of 42 U.S.C. §§ 1395d and 1396a because the causes of action involve, in part, an analysis of benefits provided under Medicare and Medicaid.

 Because removal jurisdiction raises significant federalism concerns, the removal statutes must be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts must be resolved in favor of a remand to state court. *Stone v. Williams*, 792 F.Supp. 749 (M.D.Ala.1992). Furthermore, the plaintiff is "master to decide what law he [or she] will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (brackets supplied). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Burke v. Humana Ins. Co.*, No. 95–T–299–N, No. 95–T–300–N, slip op. at 4, 1995 WL 841678 (M.D.Ala. May 11, 1995) (A plaintiff "has the prerogative to rely on state law alone although both state and federal law may give him [or her] a cause of action.") (brackets supplied). Moreover, "the plaintiff may by the allegations of his [or her] complaint determine the status with respect to the removability of a case." *Great Northern R.R. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 240, 62 L.Ed. 713 (1918) (brackets supplied).

 Whether a complaint presents a federal question must be determined from the face of the plaintiff's complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). The Supreme Court enunciated the modern test in *Franchise Tax Board*, namely that "lower federal courts [have] jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at

27–28, 103 S.Ct. at 2856. The Supreme Court has narrowly construed the test to restrict removal. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (holding that just because a claim implicates a federal issue, or involves construction of federal law, does not necessarily give rise to a federal question and confer removal jurisdiction on a federal court).

In the consolidated action of *Burke, supra,* the court faced an identical fact situation to that of the instant action. The plaintiff in *Burke* alleged that the defendants had fraudulently sold her insurance policies in violation of federal laws regarding Medicare and Medigap policies. The court found that although the plaintiff's complaint described violations of federal law, the plaintiff's election to pursue her claims under state law did not justify removal. *Id.* at 4. Furthermore, the court found that Medicare, Medicaid, and the laws providing for Medigap policies do not provide for "complete preemption" of Ms. Grace's fraud claims so as to warrant federal jurisdiction solely. *Id.* at 7. Last, relying on *Merrell Dow, supra,* the court found that the fact that a case may involve an interpretation of federal law does not give rise to a federal question and confer removal jurisdiction on a court. *Id.* at 8–9.

The defendants do not dispute that Ms. Grace's claims are brought pursuant to Alabama law. The defendants also do not contend that Ms. Grace's claims are preempted by federal law. Thus, based on the reasoning in *Burke,* the court again finds the defendants' argument unconvincing. Furthermore, because the court has determined that each of the defendants' reasons to deny Ms. Grace's motion to remand is unpersuasive, the court finds that Ms. Grace's motion to remand is due to be granted.

### D. *Attorney's Fees and Costs*

 In her motion to remand, Ms. Grace requests the court to award her attorney's fees and costs on the basis that she has clearly stated a claim for fraud against Mr. Roney, thus indicating that the case was improvidently removed. In the Judicial Improvements and Access to Justice Act of 1988

("JIAJA"), Congress greatly expanded the discretion afforded to United States district courts to award attorney's fees and costs pursuant to 28 U.S.C. §§ 1446 and 1447(c) where an action has been improperly removed to a federal court. Pub.L. 100–702. As a result of the JIAJA, the amended version of § 1447(c) provides in part that "[a]n order remanding the case may require payment of just costs and any actual expenses, *including attorney fees*, incurred as a result of the removal." (emphasis added).

There is little question that a court could award costs pursuant to § 1447(c) before the 1988 amendment in a case where, similar to the instant case, a defendant attempted to remove an action based on diversity jurisdiction even though one of the defendants resided in the forum state. *Moore v. Bishop*, 520 F.Supp. 1187, 1188 (D.S.C.1981); *see also Gibson v. Tinkey*, 822 F.Supp. 347, 349 (D.W.Va.1993) (Costs may be awarded without a showing of bad faith when the basis of removal is contrary to well-settled authority.). Prior to the 1988 amendment to § 1447(c), however, most courts did not include an award of attorney's fees for such an improper removal without a showing of bad faith because the statute did not mention attorney's fees as an available remedy to an improper removal. *Gray v. New York Life Ins. Co.*, 906 F.Supp. 628, 630–31 (N.D.Ala. 1995) (citing *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir.1981)); *Bucary v. Rothrock*, 883 F.2d 447, 450 (6th Cir.1989).

Subsequent to the amendment, though, courts have interpreted § 1447(c) to allow broad discretion to a district court when determining whether to award attorney's fees. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 325 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994); *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir.1993); *Moore v. Permanente Medical Group*, 981 F.2d 443, 447 (9th Cir.1992). In fact, pursuant to the amended version of § 1447(c), several district courts in the Eleventh Circuit have recently awarded attorney's fees against a defendant because of an improper removal even though the defendant may have acted in good faith. *Gray*, 906

F.Supp. at 637; *Liebig v. DeJoy*, 814 F.Supp. 1074, 1077 (M.D.Fla.1993); *Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union*, 900 F.Supp. 419, 421–22 (M.D.Fla.1995) (Even though the court recognized that the defendant may have acted in good faith, the court justified its decision to award attorney's fees because subject matter jurisdiction was "patently lacking.").

In this action, the court finds that removal jurisdiction was not "patently lacking" because the issue of whether diversity jurisdiction or, alternatively, federal question jurisdiction, exists is far from a simple determination. The court believes that each of the defendants' arguments was reasonable based on the information available to them at the time the case was removed. *Griggs Trucking v. American Central Ins.*, 894 F.Supp. 1503, 1510 (M.D.Ala.1995) (De Ment, J.). Thus the court finds that Ms. Grace's request for attorney's fees and costs is due to be denied.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that plaintiff's motion to remand be and the same is hereby GRANTED and that the above-styled cause be and the same is hereby REMANDED to the Circuit Court of Houston County, Alabama.

It is further CONSIDERED and ORDERED that the plaintiff's motion for attorney's fees and costs be and the same is hereby DENIED.

The clerk is DIRECTED to take the appropriate steps to effectuate said remand.