**Richard Craig WHITLOCK and Annette W. McMurtry, Plaintiffs,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Lamar Boswell Insurance Agency, and J. Lamar Boswell, Defendants.**

No. CIV. A. 98–D–517–S.

United States District Court, M.D. Alabama, Southern Division.

Oct. 21, 1998.

Wilson Daniel Miles, III, Richard D. Morrison, Montgomery, AL, for Richard Craig Whitlock and Annette W. McMurtry.

Davis Carr, Andrew C. Clausen, Mobile, AL, for Jackson National Life.

Chadwick F. Morriss, Montgomery, AL, for Lamar Boswell Ins. and Lamar Boswell.

## MEMORANDUM OPINION AND ORDER

DEMENT, District Judge.

Before the court is Plaintiffs' Motion To Remand ("Pl.'s Mot."), filed on June 2, 1998 with accompanying Evidentiary Submission And Brief In Support Of Motion To Remand ("Pl.'s Brief"), filed on June 3, 1998. Contained within Plaintiff's Motion to Remand is a Motion For Attorneys' Fees, which is also before the court. Defendant Jackson National Life Insurance Company ("Defendant Jackson") filed a Brief In Support Of Removal/Response In Opposition To Plaintiffs' Motion For Remand ("Def.'s Resp.") on June 15, 1998. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion To Remand is due to be granted. The court further finds that Plaintiffs' Motion For Attorneys' Fees And Costs is due to be denied.

## FACTUAL BACKGROUND

On April 20, 1994, Plaintiffs Annette McMurtry ("Plaintiff McMurtry") and Richard Whitlock ("Plaintiff Whitlock") applied for and were issued a $33,000.00 single premium deferred annuity policy ("Annuity") with Defendant Jackson, wherein Plaintiff McMurtry was named the owner and Plaintiff Whitlock the annuitant. (Pl.'s Compl. at 2; Def.'s Resp. at 2 and Ex. A.) Plaintiffs applied for said Annuity through Defendant J. Lamar Boswell ("Defendant Boswell"). (Pl.'s Compl. at 2.) Plaintiffs allege that, at the time they procured the Annuity, Defendant Boswell represented to them that they could withdraw up to ten percent (10%) of the Annuity each year without penalty. (Pl.'s Compl. at 2.) Additionally, Plaintiffs allege that Defendant Boswell represented to them that if they did not withdraw ten percent (10%) during one year, the following year they would be able to withdraw up to twenty percent (20%) without penalty. (Pl.'s Compl. at 2–3.) Defendant Jackson contends, and Plaintiffs do not dispute, that each Plaintiff received a copy of the Annuity. (Removal Not. ¶ 11.)

On June 2, 1995, Plaintiff McMurtry requested two withdrawals from the Annuity. (Def.'s Resp. at 2.) On September 15, 1995, Plaintiff McMurtry requested a third withdrawal from the Annuity. (Id.) In making these requests, Plaintiff McMurtry executed three Annuity Service Request Forms ("Service Forms"). (Id.) Each Service Form contained the following provisions: "This withdrawal may be subject to taxation based on IRS guidelines in effect at the time of this withdrawal" and "Withdrawals prior to age 59½ of the annuitant may be subject to IRS penalty." (Id. at Exs. B and C.) On those same forms, Plaintiff McMurtry elected not to have any applicable federal taxes withheld from her withdrawal sum. (Id.) Each form was signed by Plaintiff McMurtry. (Id.) Plaintiff McMurtry, born on February 10, 1946, was forty-nine years old at the time of withdrawal, and Plaintiff Whitlock, born on March 5, 1974, was twenty-one years old. (Def.'s Resp. at 2.)

On April 17, 1996, the ownership of the Annuity was changed from Plaintiff McMurtry to the annuitant Richard Whitlock, and a Service Form was executed to accomplish this end. (Removal Not. at 2.) The Service Form was signed by both Plaintiffs. (Id.)

Plaintiffs claim it was not until May of 1996 that they first learned that they would be subject to a ten percent (10%) penalty upon withdrawal from the Annuity prior to a certain date. (Pl.'s Brief at 2, Exs. A and B.) Plaintiffs have a relative who purchased a similar annuity from Defendants. (Id.) In May of 1996, the relative withdrew money from his annuity and was assessed a ten percent (10%) IRS penalty. (Id.)

In March 1998, Plaintiffs commenced this action by filing a complaint in the Circuit Court of Coffee County, Alabama, Enterprise Division, alleging four causes of action: (1) Defendants falsely represented the terms of the Annuity to Plaintiffs (Count One); (2) Defendants fraudulently failed to disclose the terms of the Annuity to Plaintiffs (Count Two); (3) Defendants innocently, recklessly, negligently and/or wantonly misrepresented and/or concealed material facts relating to the terms of the Annuity (Count Three); and (4) Defendants Jackson and Lamar Boswell Insurance Agency, Inc. ("Defendant Lamar Agency") negligently hired, trained, or su-

pervised Defendant J. Lamar Boswell ("Defendant Boswell") (Count Four).

On May 4, 1998, Defendant Jackson filed its Notice of Removal ("Removal Not."). Also on that date, Defendants Lamar Agency and Boswell filed their Consent to the Removal of the Action. In the Notice of Removal, Defendant Jackson contends this court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 on the basis of diversity jurisdiction because the amount in controversy exceeds the jurisdictional requisite of $75,000.00 and complete diversity exists. (Removal Not. ¶ 3.) Although Plaintiffs and Defendants Lamar Agency and Boswell are all residents of Alabama, Defendant Jackson claims that this court has diversity jurisdiction because both Defendant Lamar Agency and Boswell ("Resident Defendants") were fraudulently joined by Plaintiffs to defeat diversity. (Removal Not. ¶¶ 6,7.)

On June 2, 1998, Plaintiffs filed their Motion to Remand, wherein they also seek attorneys' fees and costs. In their motion, Plaintiffs contend this court does not have subject matter jurisdiction because the Resident Defendants were not fraudulently joined.

On June 15, 1998, Defendant Jackson filed its Brief in Support of Removal/Response in Opposition to Plaintiffs' Motion for Remand, wherein Defendant Jackson reasserts the arguments made in its Notice of Removal.

## DISCUSSION

### I. *PLAINTIFFS' MOTION TO REMAND*

■ Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). A civil action is removable to federal court pursuant to 28 U.S.C. § 1441(b) if it is one "of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c). Because removal jurisdiction raises signifi-

cant federalism concerns, the removal statutes must be strictly construed, *see Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), and all doubts must be resolved in favor of remand to state court. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) (citing *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108 (3rd Cir.1990)); *(Coker v. Amoco Oil Co.,* 709 F.2d 1433 (11th Cir.1983)); *see also Stone v. Williams,* 792 F.Supp. 749 (M.D.Ala.1992). Further, it is well-settled that the Defendant, as the party removing this action to federal court, has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996), *cert. denied,* 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997).

■ A district court has original jurisdiction over all cases between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).[1] When federal subject matter jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants. *See Carden v. Arkoma Assoc.,* 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

■ As the Supreme Court has long recognized, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). The Eleventh Circuit has articulated that joinder may be deemed fraudulent in three situations:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.... [A third situation arises] where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to

1. The court notes that Defendant Jackson does not claim that the court has federal question

jurisdiction pursuant to 28 U.S.C. § 1331.

the claim against the nondiverse defendant.

*Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287, 1998 WL 633673 (11th Cir.1998) (to be reported at: 154 F.3d 1284) (citations omitted). The defendant bears the burden of proving fraudulent joinder. *See Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989)). The burden on the defendant is a "heavy one." It requires the court to evaluate the parties' factual allegations in the light most favorable to the plaintiff and must resolve all uncertainties about state substantive law in favor of the plaintiff. *See id.; Coker,* 709 F.2d at 1440 (citing *Bobby Jones Garden Apts., Inc. v. Suleski,* 391 F.2d 172, 177 (5th Cir.1968)).[2] If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court. *See Coker,* 709 F.2d at 1440 (citing *Parks v. New York Times, Co.,* 308 F.2d 474, 477–78 (5th Cir.1962)). In addressing fraudulent joinder, the court may consider both affidavits and deposition excerpts. *Cabalceta,* 883 F.2d at 1561.

Defendant Jackson asserts only the first type of fraudulent joinder. Specifically, Defendant Jackson argues that there is no possibility that Plaintiffs can establish a cause of action against the Resident Defendants because the statute of limitations bars Plaintiffs' claims against the Resident Defendants. (Def.'s Resp. at 4–5; Removal Not. at 6.)

■ If the only claims against a resident defendant are barred by the statute of limitations, then there "is no possibility the plaintiff can establish a cause of action against the resident defendant." *Crowe,* 113 F.3d at 1538. In such a situation, the resident defendant is deemed to have been fraudulently joined. *See Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F.Supp. 1213, 1222 (S.D.Ala.1998) (holding that "[b]ecause any claim of suppression against the ... defendants would be barred by the applicable statute of limitations, there is no possibility that plaintiffs could prevail on the claim" and the

defendants were fraudulently joined). The court must determine, therefore, whether the claims asserted by Plaintiffs against the Resident Defendants are barred by the statute of limitations.

■ Plaintiffs' claims against the Resident Defendants are subject to a two-year statute of limitations. *See* Ala.Code § 6–2–38(*l* ) (Supp.1997); *Williams v. Norwest Fin. Alabama, Inc.,* 723 So.2d 97, 104, 1998 WL 656163 (Ala.Civ.App.1998) (negligence and wantonness claims subject to a two year statute of limitations); *Casassa v. Liberty Life Ins., Co.,* 949 F.Supp. 825, 828 (M.D.Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression subject to a two year statute of limitations); *Kelly v. Connecticut Mut. Life Ins. Co.,* 628 So.2d 454, 458, 460 (Ala.1993) (fraudulent representation subject to a two year statute of limitations). Because the injury occurred on April 20, 1994, the court finds that the statute of limitations for these claims ran on April 20, 1996, unless an exception to the general rule applies. *See, e.g., Williams,* 723 So.2d at 104, 1998 WL 656163 (stating that "Alabama has no 'discovery rule' with respect to negligence or wantonness actions that would toll the running of the limitations period.").

■ The statute of limitations for fraud claims is subject to the "discovery rule," however, and does not begin to run until the plaintiff discovers or should have discovered the fraud. *See* Ala.Code § 6–2–3 (Supp.1997); *Casassa,* 949 F.Supp. at 828; *Kelly,* 628 So.2d at 458, 460. The issue of whether a party discovered or should have discovered fraud, for purposes of the statute of limitations, is generally a question of fact for the jury. *See Liberty Nat'l Life Ins. Co. v. McAllister,* 675 So.2d 1292, 1297 (Ala.1995).

Recently, however, the Supreme Court of Alabama revisited the issue of the discovery rule in the context of the statute of limitations and held that under certain circumstances, the issue may be decided as a matter of law. *See Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala.1997). In *Foremost,* the Alabama Supreme Court held that "the trial

---

**2.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *See Bonner v.* *City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc* ).

court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id.* at 421. The court termed this standard the "reasonable reliance" standard.

Defendant Jackson claims that the two-year statute of limitations ran prior to Plaintiff's filing of the Complaint in March 1998. According to Defendant Jackson, the latest time by which Plaintiffs' reasonably should have discovered any alleged fraud was upon execution of the Service Forms for purposes of withdrawal on June 2, 1997 and September 15, 1997. (Def.'s Resp. at 4.)[3] Pursuant to the *Foremost* decision, the court agrees with Defendant Jackson as to Plaintiff McMurtry.

■■■ The court finds the *Foremost* case particularly instructive because the facts parallel those of the instant case. In *Foremost,* the plaintiffs purchased mobile homes and mobile home homeowner's insurance policies from defendants on February 5, 1990. *See id.* At the time of purchase, the defendants orally represented to the plaintiffs that their first year of coverage under the policies would not require the payment of a premium. *See id.* at 414. The plaintiffs signed and were provided with various documents, "all of which indicated that the premiums were charged for the first year's coverage ... and that the amount of those premiums had been included in the total amount financed by the plaintiffs in connection with the purchase of their mobile homes." *Id.* The plaintiffs relied on the defendants' representation and signed the documents without reading them. *See id.* at 415. All of the plaintiffs had

completed at least the 10th grade. *See id.* at 414.

The issue presented to the *Foremost* court was "[w]hether [defendant] was entitled to a judgment as a matter of law on the ground that the plaintiffs' claims were barred by the applicable statute of limitations." *Id.* at 416. The plaintiffs claimed that they did not read any of the sales documents or policies because they relied on the defendants' representations and, therefore, did not have actual knowledge of facts that could have put them on notice of any fraud until 1994, less than two years prior to the filing of the complaint. *See id.* at 417.

Upon analysis of the relevant facts, the *Foremost* court stated that, pursuant to the reasonable reliance standard:

> [W]e would hold that the plaintiffs should have discovered [defendant's] misrepresentation concerning the first year's premiums when they signed and received their sales documents. Because they each received their sales documents more than two years before filing this action, their misrepresentation claims would be barred by the two-year statute of limitations.

*Id.* at 422.[4] The court specifically noted that "the plaintiffs received documents when they purchased their mobile homes (most of which they signed) or shortly thereafter that if read or even briefly skimmed would have put reasonable persons on notice that, contrary to [defendant's] representation, they had paid for their first year's coverage." *Id.* at 421–422. The court further noted that all the plaintiffs were capable of reading and comprehending the documents. *Id.* at 422.

The facts of the instant case are very similar to those of the *Foremost* case, and the court, upon application of the *Foremost* reasonable reliance standard, accordingly

---

**3.** Defendant Jackson contends in its Notice of Removal that Plaintiffs should have discovered any alleged fraud upon receipt of the Annuity. (Removal Not. ¶ 11.) The court finds that the contents of the Annuity were insufficient to provide notice.

**4.** The *Foremost* court decided it would make "the new standard [of reasonable reliance] applicable in all fraud cases filed after the date of this decision, i.e., all cases filed after March 14, 1997." 693 So.2d at 421. The court therefore

declined to apply the reasonable reliance standard in that case, instead applying the justifiable reliance standard. *Id.* The court held that, under the now defunct justifiable reliance standard, the trial court had "properly declined to hold that as a matter of law the claims were barred by the statute of limitations." *Id.* In the instant case, however, the court finds that it must apply the reasonable reliance standard articulated in *Foremost* because the case was filed after March 14, 1997.

reaches the same conclusion as to Plaintiff McMurtry. On April 20, 1994, Defendants represented to Plaintiffs that Plaintiffs could withdraw up to ten percent (10%) from the Annuity each year without penalty. Plaintiff McMurtry bought the Annuity based on this representation. On June 2, 1995, Plaintiff McMurtry executed two Service Forms to withdraw funds from the Annuity. On September 15, 1995, Plaintiff again executed a Service Form to withdraw funds from the Annuity. Each of these Service Forms contained the following language: "This withdrawal may be subject to taxation based on IRS guidelines in effect at the time of this withdrawal" and "Withdrawals prior to age 59½ of the annuitant may be subject to IRS penalty." On those same forms, Plaintiff McMurtry elected not to have any applicable federal taxes withheld from her withdrawal sum. Each form was signed by Plaintiff McMurtry.

Although Plaintiff McMurtry does not explicitly state that she never read the Service Forms, her claim that she was not aware of a withdrawal penalty prior to May 1996 leads the court to infer that she did not read the documents. Upon examination of the Service Forms, the court finds that Service Forms "if read or even briefly skimmed would have put reasonable persons on notice that, contrary to [defendants'] representation," a penalty would be assessed for withdrawal of funds from the Annuity prior to a certain date. *Foremost*, 693 So.2d at 421–422. Plaintiffs proffer no reason why the statute of limitations should not begin to run as to Plaintiff McMurtry upon her execution of the Service Forms. Plaintiffs do not argue that Plaintiff McMurtry was incapable of reading or understanding the Service Forms. Therefore, the court finds as a matter of law that the statute of limitations began to run as to Plaintiff McMurtry's claims upon her execution of the Service Forms. Because the first Service Form was executed on June 2, 1995 and Plaintiffs did not file their Complaint until March of 1998, the court finds that Plaintiff McMurtry's fraud claims against the Resident Defendants are barred by the two-year statute of limitations.

 The court also finds that Plaintiff Whitlock's claims warrant a separate analysis because of his different position with regard to the Annuity. At the outset, the court notes that the Parties have failed to address this issue. The court finds, however, that Plaintiff Whitlock's role as annuitant warrants a different result than that reached as to Plaintiff McMurtry, the owner of the Annuity. Although the court found that the statute of limitations bars Plaintiff McMurtry's fraud claims as to the Resident Defendants, the court finds that Plaintiff Whitlock's fraud claims are not time-barred, and thus he did not fraudulently join the Resident Defendants.

The court finds that Defendant Jackson fails to substantiate any claim that Plaintiff Whitlock should be held responsible for the notice provided by the Service Forms executed on June 2, 1995 and September 15, 1995. At that time, the Annuity was owned by Plaintiff McMurtry, and Plaintiff Whitlock was merely the annuitant. The court finds that the earliest time by which Plaintiff Whitlock could have been held responsible for the contents of the Service Forms was on April 17, 1996, when Plaintiff Whitlock became the owner of the Annuity. The court further finds that because the Complaint was filed in March 1998, it was filed within the two year statute of limitations.

Therefore, the court finds that Plaintiff Whitlock's fraud claims against the Resident Defendants are not time-barred, and the Resident Defendants were not fraudulently joined. Thus, no diversity exists as both Plaintiffs and the Resident Defendants are from Alabama, and the court finds that Plaintiffs' Motion to Remand is due to be granted.

## II  *PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS*

Finally, the court considers Plaintiffs' request for costs and attorneys' fees. Plaintiffs claim they are entitled to such an award because "[t]here is no question that this case should not have been removed." (Pl.'s Mot. at 7.) The court finds Plaintiffs' argument unpersuasive.

 In the Judicial Improvements and Access to Justice Act of 1988 ("JIAJA"), Congress greatly expanded the discretion afforded to federal district courts to award

costs and attorneys' fees pursuant to 28 U.S.C. §§ 1446 and 1447 where an action has been improperly removed to a federal court. *See* Pub.L. 100–702. As a result of the JIA-JA, the amended version of § 1447(c) provides in pertinent part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether to award attorneys' fees and costs is within the sole discretion of the trial court. *See IMCO USA, Inc. v. Title Ins. Co. of Minnesota,* 729 F.Supp. 1322, 1324 (M.D.Fla.1990). Prior to the 1988 amendment to § 1447(c), most courts did not include an award of attorneys' fees for improper removal without a showing of bad faith because the statute did not mention attorneys' fees as an available remedy to an improper removal. *See Gray v. New York Life Ins. Co.,* 906 F.Supp. 628, 630 (N.D.Ala. 1995) (citing *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981); *Bucary v. Rothrock,* 883 F.2d 447, 450 (6th Cir.1989)).

Subsequent to the amendment, though, courts have interpreted § 1447(c) to allow broad discretion to a district court when determining whether to award attorneys' fees. *See Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321, 325 (10th Cir.1994); *Moore v. Permanente Medical Group Inc.,* 981 F.2d 443, 447 (9th Cir.1992). The standard that has emerged is whether "from aught that appears, the defendants ... have acted reasonably on the basis of the information available at the time of removal." *Howard Griggs Trucking, Inc. v. American Central Ins. Co.,* 894 F.Supp. 1503, 1510 (M.D.Ala. 1995); *see also Bedford v. Connecticut Mut. Life Ins. Co.,* 916 F.Supp. 1211, 1217 (M.D.Ala.1996) ("removal jurisdiction was not 'patently lacking' because the issue of whether diversity jurisdiction exists ... is far from a simple determination"); *Grace v. Interstate Life & Accident, Ins. Co.,* 916 F.Supp. 1185, 1192 (M.D.Ala.1996); *cf. Gray,* 906 F.Supp. at 636; *Liebig v. DeJoy,* 814 F.Supp. 1074, 1077 (M.D.Fla.1993); *Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union,* 900 F.Supp. 419, 421 (M.D.Fla. 1995) (although the court recognized that the

defendant might have acted in good faith, the court justified its award of attorneys' fees because subject matter jurisdiction was "patently lacking").

In this action, the court finds that removal jurisdiction was not "patently lacking" because Defendant Jackson acted reasonably on the basis of the information available at the time of removal. In fact, Defendant Jackson's arguments were entirely valid as pertains to Plaintiff McMurtry. Thus, the court finds that Plaintiffs' request for attorneys' fees and costs is due to be denied.

### ORDER

Accordingly, pursuant to 28 U.S.C. § 1447(c), it is CONSIDERED and ORDERED that Plaintiffs' motion to remand be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that Plaintiffs' motion for attorneys' fees and costs be and the same is hereby DENIED.

The Clerk of the Court is DIRECTED to take the appropriate steps to effectuate said remand.