Glenda B. FOWLER, Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; Unum Provident Corporation; and Teresa H. Marshall, Defendants.**

No. CV 02–B–2456–S.

United States District Court,
N.D. Alabama,
Southern Division.

March 10, 2003.

David H Marsh, Nat Bryan, Marsh Rickard & Bryan PC, Birmingham, for Glenda B Fowler, plaintiff.

Henry T Morrissette, Douglas W Fink, Hand Arendall LLC, Mobile, John S Johnson, Hand Arendall LLC, Birmingham, for Provident Life & Accident Insurance Company, Unum Provident Corporation, Teresa H Marshall, defendants.

## MEMORANDUM OPINION AND ORDER

BLACKBURN, District Judge.

Currently before the court is a Motion to Remand filed on November 1, 2002, by

plaintiff, and a Motion to Dismiss, filed by defendant, Teresa H. Marshall,[1] on October 10, 2002. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that plaintiff's Motion to Remand is due to be denied.

## I. FACTUAL SUMMARY

Plaintiff, Glenda B. Fowler ("plaintiff" or "Fowler"), purchased a disability insurance policy from defendant, Provident Life and Accident Insurance Company ("Provident"), in September 1992, which policy became effective in November, 1992. (Compl. ¶ 1.) Plaintiff's policy provides for the payment of disability benefits to an insured once it is determined that the insured is unable to perform the substantial and material duties of the occupation in which the insured is regularly engaged at the time the insured becomes disabled, and the insured is receiving a physician's care appropriate for his or her disability. (Policy, Definitions, at 4.) If, under the policy, Provident becomes obligated to pay continuing benefits, the insured is responsible for periodically submitting written proof of loss. (Policy, Proof of Loss, at 13). Provident pays those benefits upon receipt of this proof of loss from the insured. (Policy, Time of Payment of Claims, at 14.) Under the policy, Provident also reserves the right to have plaintiff examined, at the company's expense, during the pendency of a claim for benefits. (Policy, Physical Examinations, at 14.)

In 1997, plaintiff's physician found that she was totally disabled from performing her work. (Compl. ¶ 3.) Plaintiff "suffers from major depression, Post Traumatic Stress Syndrom[e], anxiety disorder and migraine/tension headaches," and the stress from her work contributes to her condition. (Compl. ¶¶ 3, 4.) Following this diagnosis, plaintiff filed a claim with Provident for disability benefits, and, allegedly, "complied with all required conditions of her disability policy pertaining to notice and proof of claim." (Compl. ¶ 4.) Shortly thereafter, plaintiff began receiving benefits under the policy. On June 4, 2001, however, Provident terminated her benefits. The complaint states that Provident's decision was based on its determination that the "diagnosis of Major Depression is not supported and [plaintiff] do[es] not have significant current restrictions or limitations which would prevent [plaintiff] from returning to work in [her] occupation as a real estate agent." (Compl. ¶ 8.) Plaintiff contends that she was still unable to perform work when her benefits were terminated. (Compl. ¶ 7.)

Plaintiff filed this lawsuit on August 26, 2002, naming as defendants, Provident, Unum Provident Corporation, and Teresa H. Marshall ("Marshall"), a Provident agent. Plaintiff asserts claims against Marshall for fraudulent and/or negligent misrepresentation and fraudulent suppression, arising from her purchase of the disability insurance policy. (*See* Compl. ¶¶ 13–18.) In the complaint, plaintiff states that Marshall told her that benefits would be due under the policy "in the event that plaintiff was not able to perform her duties as a Real Estate Agent." (Compl. ¶¶ 1–2.) In an affidavit, filed together with her motion to remand, plaintiff elaborates on the allegations in the complaint by identifying several other statements allegedly made by Marshall, including: (1) "Teresa H. Marshall told me that, if I were to become disabled, all I would have to do to receive benefits under the Provident disability policy was to have my

1. In her Motion to Dismiss, Teresa H. Jenkins states that she was improperly designated in the Complaint as Teresa H. Marshall. (*See* Mot. to Dismiss at 1.) The court will, however, refer to this individual as Teresa H. Marshall.

physician fill out a form and, once the form was received and reviewed by Provident, my benefits would begin to be paid to me," (Fowler Aff. ¶ 6); (2) "I asked Teresa H. Marshall whether I would have to be examined by a Provident physician in order to receive disability benefits and Teresa H. Marshall told me that Provident usually did not require its insureds to be examined by Provident's physicians and Teresa H. Marshall specifically told me that 'it is your doctor who we rely on' to determine disability," (*Id.* ¶ 8); (3) "Teresa H. Marshall told me that Provident might waive my having to submit monthly physician's reports," (*Id.* ¶ 9); (4) "Teresa H. Marshall never told me that Provident utilized any sort of case-review program in which disability claims would be or were reviewed and terminated after Provident had been paying benefits to the insured," (*Id.* ¶ 10).

## II. DISCUSSION

Defendants contend that this action has been properly removed because the court has subject matter jurisdiction based on diversity. Diversity jurisdiction is present where the parties are diverse and the amount-in-controversy exceeds $75,000. *See* 28 U.S.C. § 1332. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir.1996). As plaintiff correctly points out, there is not complete diversity between the plaintiff, and defendant, Marshall, both of whom are residents of the State of Alabama.

■ In response, defendants assert that the court should disregard Marshall's residency because she has been fraudulently joined. Defendants statement of the law is correct. "When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based on diversity of citizenship." *See Bullock v. United Benefit Ins. Co.*, 165 F.Supp.2d 1255, 1257 (M.D.Ala.2001). Therefore, the court will determine whether it has diversity jurisdiction over this action.

### A. Fraudulent Joinder

■ The defendant bears the burden of establishing federal jurisdiction, or in this case, fraudulent joinder. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Joinder of a non-diverse defendant is fraudulent if "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; [s]he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* at 1287.

■ The court should determine its jurisdiction over the case "based upon the plaintiff's pleadings at the time of removal," *Coker*, 709 F.2d at 1440, supplemented by any affidavits or deposition transcripts filed by the parties,[2] *de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998). "While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ.

**2.** Defendant contends that the court should not consider the allegations included in plaintiff's affidavit which was attached to the motion to remand. However, the court finds that certain parts of the affidavit serve to clarify or amplify the claims asserted in the complaint, and will consider those parts of plaintiff's affidavit in support of plaintiff's motion. *See Griggs v. Blum*, 181 F.3d 694 (5th Cir.1999).

P 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.' ... When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (citations omitted). The court "should resolve all questions of fact and controlling law in favor of the plaintiff," *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989), and any doubts about the propriety of the removal must be resolved against the exercise of federal jurisdiction and in favor of remand, *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994).

### 1. Failure to State a Claim

 Defendants maintain that plaintiff fails to state a claim against Marshall because the representations made by Marshall were not false. Indeed, one essential element of a claim based on misrepresentations made either willfully, recklessly or mistakenly, is that there has actually been a false representation. *See Taylor v. Moorman Mfg. Co.,* 475 So.2d 1187, 1189 (Ala.1985); *see also Levett v. The Indep. Life & Acc. Ins. Co.,* 814 F.Supp. 1053, 1057 (M.D.Ala.1993) ("If, however, the representation were made to [the plaintiff-beneficiary], the claim still fails because the representations were not false. The representations made by [the defendant-agent] were true facts supported by the language in the policy and consistent with the defendant[-insurer's] reason for denying the claim. Absent a false statement there can be no reliance, justifiable or

otherwise, that gives rise to this [fraud] action.").

Obviously, to the extent that plaintiff's claims are based on representations made by Marshall that accurately reflect the true nature of coverage under the terms of the policy, plaintiff has not stated a claim for fraudulent or negligent misrepresentation because there has been no false representation. *See Levett,* 814 F.Supp. at 1057. However, upon examination of the allegations in the complaint and plaintiff's affidavit, it is clear to the court that plaintiff alleges that Marshall made some statements that contradict the terms of the policy, and are therefore false representations. As to these alleged statements, the court finds that plaintiff has a possibility of stating valid claims of fraudulent and/or negligent misrepresentation against Marshall. *See Triggs,* 154 F.3d at 1287.[3] In addition, the court will assume that plaintiff has stated a claim based on fraudulent suppression. In any event, defendant contends that these claims are barred by the statute of limitations.

### 2. Statute of Limitations

 If the fraud claims and the negligent misrepresentation claim are time-barred, as defendants contend, then there is no possibility that the plaintiff can establish a cause of action against her, and the court should find that Marshall has been fraudulently joined. *See e.g., Bullock,* 165 F.Supp.2d at 1258 ("If the only claims against a resident defendant are barred by the statute of limitations, then there 'is no possibility the plaintiff can establish a cause of action against the resident defendant.' In such a situation, the

---

3. It is certainly conceivable that plaintiff, the insured, relied on statements made by the insurer's agent, Marshall, concerning the coverage and procedures under the policy when she chose to purchase her policy from Provident. *See Taylor,* 475 So.2d at 1189 (stating

that elements of fraud based on misrepresentations made either willfully, recklessly or mistakenly are: (1) a false representation, (2) concerning a material existing fact, (3) upon which the plaintiff has relied, and (4) has been damaged as a proximate result).

resident defendant is deemed to be fraudulently joined.") (quoting *Whitlock v. Jackson Nat. Life. Ins. Co.*, 32 F.Supp.2d 1286, 1289, 1290 (M.D.Ala.1998)); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213, 1222 (S.D.Ala. 1998). The limitations period applicable to each of the claims asserted against Marshall is two years, and begins to run on the date plaintiff discovers, or should have discovered, the fraud and the misrepresentation.[4] *See* Ala.Code §§ 6-2-3, 6-2-38(*l* ); *see also Abston*, 822 So.2d at ("The limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.' ") (citation omitted). Generally, determining the date plaintiff discovered a fraud is a question of fact for the jury. *See Liberty Nat'l Life Ins. Co. v. McAllister*, 675 So.2d 1292, 1297 (Ala. 1995).

Defendants assert that in accordance with *Foremost Insurance Co. v. Parham*, 693 So.2d 409 (Ala.1997), this court should determine as a matter of law that plaintiff should have discovered the fraud or misrepresentations, if any, when she purchased the disability insurance policy in 1992. *See id.* at 421–22. "The *Foremost* decision reestablished that the objective[, reasonable reliance] standard for determining the accrual date for a fraud claim imposes a duty to read documents received in connection with a particular transaction.

Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud, or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document . . . ." *Bullock*, 165 F.Supp.2d at 1258 (citations omitted).[5]

■ There are limitations on the *Foremost* rule. An individual is not capable of discovering a fraud or negligent misrepresentation by reading and understanding the terms of a contract if he or she is illiterate, *see Potter v. First Real Estate Co.*, 844 So.2d 540, 2002 WL 31002850, at **6–7, 2002 Ala. LEXIS 259, at *17–*18 (Ala. Sept. 6, 2002) ("It has long been settled law of this State that a party to a contract who is illiterate can allege fraud and thereby overcome the other party's reliance on the terms expressed in the contract.") (citing *Paysant v. Ware*, 1 Ala. 160 (1840)), or if the underlying document is ambiguous, *i.e.*, capable of more than one interpretation, and thus hard to understand, *see Ex parte Seabol*, 782 So.2d 212, 216–17 (Ala.2000) (finding that where underlying documents are not easily understood, plaintiff's reliance on oral representation concerning documents is reasonable). Plaintiff does not allege that plaintiff was illiterate, or otherwise unable to read the policy. Without evidence or argument to the contrary, it is entirely reasonable to presume that plaintiff, a former real estate agent,

---

4. The limitations period for claims based on fraudulent suppression is the same for one based on fraudulent misrepresentation. *See Auto–Owners Ins. Co. v. Abston*, 822 So.2d 1187, 1194 (Ala.2001) ("Claims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations.") (citing Ala.Code § 6-2-38(*l* )). A claim for negligent misrepresentation, *i.e.*, based on misrepresentations made by mistake or innocently, is a claim for legal fraud and is subject to the same limitations period as plain-

tiff's fraud claims. *See* Ala.Code. § 6-5-101; *see also id.* §§ 6-2-3, 6-2-38(*l* ).

5. The *Foremost* rule applies both in cases of fraudulent misrepresentation, fraudulent suppression, and negligent misrepresentation. *See Foremost*, 693 So.2d at 417 (involving fraudulent misrepresentation and fraudulent suppression); *Bullock*, 165 F.Supp.2d at 1258 (applying *Foremost* rule to claims based on all three theories).

was capable of reading the policy in 1992 when it was issued. Therefore, plaintiff became aware of the fraud allegedly committed, and the misrepresentations allegedly made, by Marshall in 1992.

For example, according to the definition of "totally disabled" in the policy, plaintiff had a continuing obligation to obtain medical treatment for her condition. Payment of benefits under the policy was tied to periodic submission by the plaintiff of "proof of loss." Additionally, the policy clearly contemplates an ongoing analysis of a claim for continued disability, as well as examination of the insured by a doctor chosen by Provident. Even if these provisions were not fully disclosed or explained to plaintiff, she should have been on notice of the pertinent procedures and terms of the policy when she received it in 1992. Plaintiff's reliance on Marshall's alleged representations to the contrary, or her reliance on facts allegedly suppressed by Marshall, after she had received the policy, was not reasonable. Furthermore, the policy clearly states that "[n]o agent may change this policy or waive any of its provisions." (Policy, Entire Contract, at 14.) Therefore, under the *Foremost* rule, the plaintiff should have discovered the possibility of fraud and misrepresentation in 1992 when she purchased the policy, and the two year statute of limitations commenced running at that time. The limitations period lapsed by the time plaintiff filed her lawsuit in 2002. Therefore, since there is no possibility that plaintiff can state a claim against Marshall, the court is of the opinion that Marshall has been fraudulently joined. Disregarding the residency of Marshall, the court finds that

there is complete diversity between plaintiff and the remaining defendants.

### 3. Amount in Controversy

In addition to complete diversity, the court must be satisfied that the amount in controversy requirement is met. In the Complaint, plaintiff does not specify an amount of damages sought, other than "a sum ... which will fairly and adequately compensate the plaintiff for injuries and damages sustained." (Compl. at 11.) Because the plaintiff seeks an unspecified amount, the defendant need only show "that the amount in controversy more likely than not exceeds the jurisdictional requirement." *See Tapscott*, 77 F.3d at 1357. Upon careful review of the cases cited by the defendant, the court concludes that defendant has sufficiently demonstrated that the amount in controversy requirement has been met.[6] (*See* Notice of Rem. ¶¶ 33–38.)

### III. CONCLUSION

For the reasons stated herein, the court is of the opinion that plaintiff's Motion to Remand is due to be, and hereby is, **DENIED**. Furthermore, in light of this court's finding that Marshall has been fraudulent joined, the court hereby concludes that the Motion to Dismiss the claims against defendant Marshall is due to be and hereby is **GRANTED**. All claims against defendant Marshall are **DISMISSED WITHOUT PREJUDICE.** The court retains diversity jurisdiction over plaintiff and the remaining defendants. The clerk is **DIRECTED** to file in

---

**6.** The court would add only that if a jury finds that plaintiff is entitled to unpaid total disability benefits dating back to June 5, 1997, the date they were terminated, it is more likely than not that damages would exceed $75,000.

The lowest award of monthly benefits for total disability under the policy appears to be $2,000.00. (*See* Policy, at 3; *id.*, Update, at 3(cont.).)

the record Defendants' Opposition to Plaintiff's Motion to Remand.